Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253
  -and-
Lawrence P. Eagel (LE 4505)
Jeffrey H. Squire
BRAGAR WEXLER EAGEL & SQUIRE, PC
885 Third Avenue, Suite 3040
New York, NY  10022
Tel: (212) 308-5858
Fax: (212) 486-0462

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROSPECT MEDICAL, P.C., PREMIER HEALTH CENTER, P.C., SHORE SPINE CENTER & PHYSICAL REHABILITATION, P.C. D/B/A NORTHEAST SPINE AND SPORTS MEDICINE, and NORTHEASTERN SPINAL HEALTH & REHABILITATION, LLC, on behalf of themselves and others similarly situated, | 09 Civ. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| CIGNA CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, AND CIGNA HEALTHCARE, | |
| Defendants. | |

Plaintiffs Prospect Medical, P.C., Premier Health Center, P.C., and Shore Spine Center & Physical Rehabilitation, P.C. d/b/a NorthEast Spine and Sports Medicine, and Northeastern Spinal Health & Rehabilitation, LLC, by their undersigned counsel, allege, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action against Cigna Corporation ("Cigna Corp."), Connecticut General Life Insurance Company ("CG Life"), Cigna's major insurance subsidiary, and the unincorporated association and business segment within Cigna Corp. and CG Life, Cigna HealthCare ("Cigna HealthCare") (collectively, Cigna Corp., CG Life and Cigna HealthCare are referred to herein as "Cigna"), for a declaration of Cigna's duty to reimburse patient charges for manipulation under anesthesia ("MUA") procedures; for a permanent injunction against Cigna's conduct in denying reimbursement upon submission of such claims (requiring affected patients and providers to undertake an arduous process of appealing the denials of payment); and for damages arising from Cigna's improper denials of payment.

2. Plaintiffs are licensed health care providers who seek to represent a class of similarly situated persons described below who were affected by Cigna's conduct as alleged herein (the "Class"). Plaintiffs allege systemic and repeated improper conduct by Cigna in denying patient reimbursement as described more fully herein.

3. Plaintiffs are – and, during the Class Period, as defined below, were – duly licensed health care providers who have not entered into a contract with Cigna to be part of its provider networks. As non-participating ("Nonpar") providers, Plaintiffs were free to provide generally accepted chiropractic services and were entitled to charge their usual and customary rates for such services. Moreover, Cigna must pay benefits to Plaintiffs, or their patients, pursuant to the terms and condition of Cigna's Plans and/or plans administered by Cigna. As Nonpar providers, the Insureds who were treated by Plaintiffs owe them for the full amount of their bill once a service is provided.

2

**THE PLAINTIFFS**

4.       Plaintiff Prospect Medical, P.C. ("Prospect") is a professional corporation organized under the laws of the State of New Jersey, with its principal place of business located at 385 Prospect Avenue, Hackensack, New Jersey, 07601.

5.       Plaintiff Premier Health Center, P.C. ("Premier") is a professional corporation organized under the laws of the State of New Jersey, with its principal place of business located at 385 Prospect Avenue, Hackensack, New Jersey, 07601.

6.       Plaintiff Shore Spine Center & Physical Rehabilitation, P.C. d/b/a NorthEast Spine and Sports Medicine ("NorthEast") is a professional corporation organized under the laws of the State of New Jersey, with its principal place of business located at 2080 West County Line Road, Jackson, New Jersey, 08527.

7.       Plaintiff Northeastern Spinal Health & Rehabilitation, LLC ("Northeastern") is a limited liability corporation organized under the laws of the State of New Jersey with its principal place of business located at 205 Browertown Road, Suite 002, West Paterson, New Jersey, 07424.

**THE DEFENDANTS**

8.       Defendant Cigna Corp. is a corporation organized under the laws of the State of Delaware, with its headquarters located at Two Liberty Place, Philadelphia, Pennsylvania, 19192.   Cigna Corp. and its subsidiaries constitute one of the largest investor-owned health service organizations in the United States.  Cigna Corp.'s subsidiaries are major providers of health care and related benefits, the majority of which are offered through the workplace, including, health care products and service.  Cigna Corp. had consolidated shareholders equity of $3.6 billion and assets of $41.4 billion as of December 31, 2008, and revenues of $19.1 billion

for the year then ended.

9. Defendant Cigna Corp. and its subsidiaries offers, underwrites, and administers commercial health plans ("Plan" or "Plans"), through which health care expenses incurred by Plan insureds for services and/or products covered by the Plans are reimbursed by and/or through Cigna, subject to the Plan's terms, conditions, and limitations. Defendant Cigna Corp. is one of the largest health insurers in the United States, covering nearly 12 million people with its various medical plans, which include PPO, HMO, point-of-service, indemnity, and consumer-directed products.

10. Defendant Connecticut Life Insurance Company ("CG Life") is Cigna's major insurance subsidiary, with its headquarters located at Two Liberty Place, Philadelphia, Pennsylvania, 19192.

11. Defendant Cigna HealthCare is Cigna's health care segment. Defendant Cigna HealthCare offers insured and self funded medical, dental, behavioral health, vision and prescription drug benefit plans, health advocacy programs and other products and services that may be integrated to provide individuals with comprehensive health care benefit programs. Defendant Cigna HealthCare also provides disability and life insurance products that were historically sold in connection with certain experience-rated medical products. These products and services are provided and administered by subsidiaries of defendant Cigna Corp.

12. According to Cigna Corp.'s Form 10-K filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2008, Cigna Corp.'s health care operations are centralized within Cigna HealthCare. Defendant Cigna HealthCare operates eleven service centers that, according to Cigna Corp., processed approximately 122 million medical claims in 2008. In light of Cigna's domination and control of its subsidiaries, the integration of its

businesses, including specifically the operations of Cigna HealthCare, defendant Cigna HealthCare is properly named herein as an unincorporated association defendant that is also liable to plaintiffs for the misconduct alleged herein.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000 and there is diversity of citizenship between a Plaintiffs and Defendant. This Court also has subject matter jurisdiction over this matter pursuant to Employee Retirement Income Security Act (ERISA) § 502(a)(1)(B), 28 U.S.C. § 1332(a)(1)(b), and pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this district pursuant to 18 U.S.C. § 1965 because Defendant, *inter alia*, conducts business within this judicial district, and/or 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action on their own behalf and behalf of a Class defined as follows:

> All Nonpar health care providers who, from the beginning of the longest appropriate statute of limitations through the present (the "Class Period"), provided MUA medical services for which Cigna declined payment of the provider's billed charge, or for which Cigna required the provider to appeal Cigna's nonpayment of benefits.

16. The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of health care providers throughout the United States. The precise number of Class members is within Cigna's

custody and control.  Based on reasonable estimates, the numerosity requirement is easily satisfied for the Class.

17. Common questions of law and fact exist as to all class members and predominate over any questions affecting solely individual members of the Class.

18. The named plaintiffs' claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, Cigna breached its contractual obligations to the named plaintiffs and the Class through and by uniform patterns or practices described herein.

19. The named plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation, and have no interests antagonistic to or in conflict with those of the Class.  For these reasons, the named plaintiffs are adequate class representatives.

20. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Cigna.

21. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the class is impracticable. Further, because the damages due to individual class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them.

## FACTS

**A.    MANIPULATION UNDER ANESTHESIA**

22. Manipulation Under Anesthesia ("MUA") is a manual therapy treatment system

which is used to improve articular and soft tissue movement using specifically-controlled release, myofascial manipulation, and mobilization techniques with an anesthesiologist while the patient is under moderate to deep sedation using monitorized anesthesia care.  MUA is employed by specially-trained chiropractors and orthopedic surgeons together with an anesthesiologist as a means of breaking up scar tissue around a joint without complete range of motion.

23. For more than 30 years, MUA procedures have been listed as a Category I CPT code in the Codebook of Reimbursable Procedures published by the American Medical Association ("AMA").

24. In order for a medical procedure to be listed as a Category 1 CPT code, the AMA must reach the following determinations:

   a. that the service/procedure has received approval from the Food and Drug Administration (FDA) for the specific use of device or drugs;

   b. that the suggested procedure/service is a distinct service performed by many physicians/practitioners across the United States;

   c. that the clinical efficacy of the service/procedure is well established and documented in the United States per review literature;

   d. that the suggested service/procedure is neither a fragmentation of an existing procedure/service nor currently reportable by one or more existing codes; and

   e. that the suggested service/procedure is not requested as a means to report extraordinary circumstances related to the performance of a procedure/service already having a specific CPT code.

**B.        REPRESENTATIVE CASES**

**Patient RV**

25.     Patient RV received treatment from Phillip Kim, DC, of Plaintiff Premier and Shan Sivendra, MD, of Plaintiff Prospect on December 26, 27 and 29, 2008, for chronic pain in the patient's spine, hips, and shoulders.  The treatment on each of the three days consisted of spinal manipulation under anesthesia (CPT 22505), pelvic ring manipulation under anesthesia (CPT 27194), hip joint manipulation under anesthesia (CPT 27275), and shoulder joint manipulation under anesthesia (CPT 23700).

26.     As is the usual procedure with health care providers, Patient RV signed assignments of insurance benefits to Prospect and Premier, dated July 30, 2008.

27.     On or about March 3, 2009, health insurance claim forms were submitted to Cigna requesting reimbursement for services performed in December 2008, by Premier totaling $27,450, and $27,450 for services performed by Prospect as co-surgeon.

28.     On or about February 11, 2009, Cigna notified Prospect and Premier that Cigna was denying reimbursement for the MUA procedures administered to Patient RV on the grounds that the procedures were experimental, investigational, and/or not medically necessary and were therefore non-recognized procedures under Patient RV's Cigna-administered health care plan.

29.     In fact, the CPT codes for the procedures administered to Patient RV were recognized procedures under Patient RV's Cigna-administered health care plan.

30.     On or about March 3, 2009, N&D Consulting contacted Cigna on behalf of Patient RV to appeal Cigna's non-payment and request reimbursement of the charges.

31.     By letter dated March 11, 2009, Cigna notified Patient RV that Cigna was upholding its original decision to deny reimbursement for the MUA procedures.

8

32. On or about April 3, 2009, N&D Consulting filed a Stage 2 appeal of Cigna's nonpayment on behalf of Patient RV. Cigna denied this appeal as well.

33. N&D Consulting then contacted the Claims Review Committee of the UPS Flexible Benefits Plan (the "UPS Plan Committee") on behalf of Patient RV to request a review of Cigna's decision to deny reimbursement of the charges. By letter dated July 8, 2009, the UPS Plan Committee denied reimbursement, finding that the procedures "were not medically necessary."

**Patient AS**

34. Patient AS received treatment from Dimitrios Lambrou, DC, of Plaintiff NorthEast on December 11, 12, and 15, 2008, for chronic back pain. The treatment consisted of spinal manipulation under anesthesia (CPT 22505), pelvic ring manipulation under anesthesia (CPT 27194), hip joint manipulation under anesthesia (CPT 27275), and shoulder joint manipulation under anesthesia (CPT 23700).

35. As is the usual procedure with health care providers, Patient AS signed an assignment of insurance benefits to NorthEast, dated November 13, 2008.

36. On or about December 18, 2008, in response to NorthEast's submission of a claim for reimbursement for the procedures performed on Patent AS, Cigna sent NorthEast a Provider Explanation of Benefits Report that indicated that, for each of the MUA procedures, "certain additional information from the provider is necessary to review the claim for medical necessity."

37. On or about January 21, 2009, after NorthEast submitted to Cigna the additional information its had requested, Cigna notified NorthEast that Cigna was denying reimbursement for the MUA procedures administered to Patient AS on the grounds that the procedures were experimental, investigational, and/or not medically necessary and were therefore non-recognized

procedures under Patient AS's Cigna-administered health care plan.

38. On or about March 23, 2009, N&D Consulting contacted Cigna on behalf of Patient AS to appeal Cigna's non-payment and request reimbursement of the charges.

39. Cigna subsequently notified Patient AS that the appeal of Cigna's non-payment decision was denied.

40. On or about June 30, 2009, N&D Consulting contacted Cigna to make a second-level appeal of Cigna's non-payment decision regarding the procedures administered to Patient AS.

41. On or about July 28, 2009, Cigna notified Patient AS that the second-level appeal of Cigna's non-payment decision was denied.

**Patient ML**

42. Patient ML received treatment from Michael R. Czupak, DC, of Plaintiff Northeastern on October 23, 24, and 25, 2008, for lumbar radiculitis, lumbar disc disease, pelvic pain, hip derangement, cervical disc herniation, lumbar disc herniation, thoracic spine pain, and shoulder pain. The treatment on each of the three days consisted of spinal manipulation under anesthesia (CPT 22505), hip joint manipulation under anesthesia (CPT 27275), and shoulder joint manipulation under anesthesia (CPT 23700).

43. As is the usual procedure with health care providers, Patient ML signed an assignment of insurance benefits to Northeastern.

44. On or about October 31, 2008, Northeastern submitted to Cigna claim forms requesting payment for the procedures performed on Patient ML, totaling $28,200.

45. On or about December 13, 2008, Cigna responded with a Provider Explanation of Medical Payment Report that indicated Cigna would pay only $1,331.25 of the $28,200

requested in the claim forms. Of the $26,868.75 in claims denied by Cigna, $22,868.75 of that amount was denied for the stated reason that the procedures were "experimental and/or investigational."

46. By letter dated January 20, 2009, Northeastern appealed Cigna's nonpayment, noting, *inter alia*, that the procedures at issue were listed as established procedures in the AMA CPT codebook of reimbursable procedures, and as such did not represent experimental or emerging technologies.

47. By letter dated January 28, 2009, Cigna denied the first-level appeal of non-payment, on the stated grounds that "the information provided does not establish the medical necessity for these procedures."

48. On or about February 4, 2009, Cigna was sent a second-level appeal of its non-payment determination concerning Patient ML's MUA procedures.

49. By letter dated March 5, 2009, Cigna denied the second-level appeal, stating that the procedures at issue were "considered to be experimental, investigational, and unproven" and therefore excluded from coverage.

50. By letter dated July 29, 2009, N&D Consulting, Inc. appealed Cigna's partial and non-payment of Patient ML's claims, noting that the services were "deemed medically necessary," and attaching all of the supporting medical documentation.

51. In response, Cigna notified Patient ML, by letter dated October 1, 2009, that Cigna would not pay the charges and that Cigna "will not perform any further review of this matter as the internal appeals process had been exhausted."

## CLAIMS FOR RELIEF

### COUNT I

### DECLARATORY JUDGMENT

52.     Plaintiffs repeat and reallege the allegations of paragraphs 1-51 as if fully set forth herein.

53.     As detailed above, Cigna has engaged in a systematic course of improperly denying reimbursements for MUA medical procedures, despite the fact that such procedures are properly prescribed and performed, and are recognized by the American Medical Association recognizes as non-experimental, non-emerging medical procedures.

54.     Plaintiffs therefore seek relief by way of a declaratory judgment as to the obligation of Cigna to reimburse patient charges for MUA procedures performed by Plaintiffs and the other health care providers constituting the Class, and in particular he obligation of Cigna to reimburse such procedures without requiring providers and patients to engage in an arduous denial of payment appeal procedure.

### COUNT II

### PERMANENT INJUNCTION - BREACH OF CONTRACT

55.     Plaintiffs repeat and reallege the allegations of paragraphs 1-54 as if fully set forth herein.

56.     By virtue of its various health care plans and policies, Cigna has a contractual obligation to reimburse patients and/or providers for covered medical procedures when properly performed.

57.     Cigna has engaged in a systematic course of improperly denying reimbursements for MUA medical procedures, despite the fact that such procedures are properly prescribed and

performed, and are recognized by the American Medical Association recognizes as non-experimental, non-emerging medical procedures.

58. Cigna's denial of reimbursement requests for MUA procedure constitutes a breach of its contractual obligations under the various health care plans and policies issued and/or administered by Cigna.

59. Cigna's systematic breach of its contractual obligations has, and continues to, cause damage to the Class.

60. In addition, Cigna's systematic breach of contract has, and continues to, threaten proper patient care by discouraging necessary medical procedures.

61. As such, Plaintiffs seek an order permanently enjoining Cigna from automatically denying reimbursement for MUA medical procedures.

## COUNT III

### DAMAGES - BREACH OF CONTRACT

62. Plaintiffs repeat and reallege the allegations of paragraphs 1-61 as if fully set forth herein.

63. By virtue of its various health care plans and policies, Cigna has a contractual obligation to reimburse patients and/or providers for covered medical procedures when properly performed.

64. Cigna's denial of reimbursement requests for MUA procedure constitutes a breach of its contractual obligations under the various health care plans and policies issued and/or administered by Cigna.

65. Cigna's systematic breach of its contractual obligations has caused, and continues

13

to cause, damage to Plaintiffs and to the Class.

66. In particular, Cigna's requirement that health care providers and/or patients undertake an arduous denial of payment appeals process imposes unnecessary administrative and legal costs on providers.

67. In addition, the requirement of an arduous denial of payment appeals process effectively denies reimbursement to entitled providers and/or patients who may be unwilling or unable to undertake the cost and effort of the appeals process.

68. By reason of Cigna's systematic breaches of its contractual obligations, Plaintiffs and the Class have been damaged in an amount to be determined at trial but believed to be in excess of $5 million.

## COUNT IV

### DAMAGES - BREACH OF FIDUCIARY DUTY

69. Plaintiffs repeat and reallege the allegations of paragraphs 1-68 as if fully set forth herein.

70. As an administrator of health care plans pursuant to which Plaintiffs provide health care services, Cigna owes a fiduciary duty to Plaintiffs and to the Class.

71. By arbitrarily deeming MUA medical procedures to be experimental, investigatory, and/or not medically necessary, and by therefore denying reimbursement for those procedures, Cigna has, and continues to, systematically breach its fiduciary duty to Plaintiffs and to the Class.

72. Cigna's systematic breach of its fiduciary obligations has caused, and continues to cause, damage to Plaintiffs and to the Class.

73. In particular, Cigna's requirement that health care providers and/or patients undertake an arduous denial of payment appeals process imposes unnecessary administrative and legal costs on providers.

74. In addition, the requirement of an arduous denial of payment appeals process effectively denies reimbursement to entitled providers and/or patients who may be unwilling or unable to undertake the cost and effort of the appeals process.

75. By reason of Cigna's systematic breaches fiduciary duty, Plaintiffs and the Class have been damaged in an amount to be determined at trial but believed to be in excess of $5 million.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and the Class as follows:

(a) certifying a class consisting of all Nonpar health care providers who provided MUA medical services for which Cigna declined payment of the provider's billed charge, or for which Cigna required the provider to appeal Cigna's nonpayment of benefits;

(b) against Cigna on the First Count for declaratory relief wherein Plaintiff seeks a declaration as to the obligation of Cigna to reimburse patient charges for MUA procedures performed by Plaintiffs and the other health care providers constituting the Class, and in particular the obligation of Cigna to reimburse such procedures without requiring providers and patients to engage in an arduous denial of payment appeal procedure;

(c) against Cigna on the Second Count for a permanent injunction barring Cigna from

automatically denying reimbursement for MUA medical procedures;

(d) against Cigna on the Third Count for compensatory damages in an amount to be determined at trial but believed to be in excess of $5 million, together with pre-judgment interest, as well as costs, disbursements and attorney fees incurred herein;

(e) against Cigna on the Fourth Count for compensatory damages in an amount to be determined at trial but believed to be in excess of $5 million, together with pre-judgment interest, as well as costs, disbursements and attorney fees incurred herein; and

(f) granting such other and further relief as the court may deem just and proper.

Dated: November 19, 2009

By: /s/ Julie Lefkowitz
Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253
   -and-
BRAGAR WEXLER EAGEL & SQUIRE PC

By: /s/ Lawrence P. Eagel
Lawrence P. Eagel (LE 4505)
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bragarwexler.com

*Attorneys for Plaintiffs*