## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PROSPECT MEDICAL, P.C. , PREMIER
HEALTH CENTER, P.C., SHORE SPINE
CENTER & PHYSICAL REHABILITATION,
P.C. D/B/A NORTHEAST SPINE AND
SPORTS MEDICINE, and NORTHEASTERN
SPINAL HEALTH & REHABILITATION,
LLC, on behalf of themselves and others
similarly situated,

          Plaintiffs,

     vs.

CIGNA CORPORATION, CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,
AND CIGNA HEALTHCARE,

         Defendants.

*Document Electronically Filed*

Civil Action No.: 09-5912 (DRD) (MAS)

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)

Brian J. McMahon
E. Evans Wohlforth, Jr.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4870
bmcmahon@gibbonslaw.com
ewohlforth@gibbonslaw.com

*Attorneys for Defendants*
*CIGNA Corporation and*
*Connecticut General  Life Insurance Company*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL ARGUMENT

I.     The Standard Applicable on a Motion to Dismiss Pursuant to Rule 12(b)(6) ..................................................................................................... 3

II.     Each of the Causes of Action Alleged in the Complaint is Preempted By ERISA ............................................................................................. 5

III.     Plaintiffs Have Failed to Plead Their Claims With Sufficient Particularity ......... 12

     A.     Each of Plaintiffs' Causes of Action Are Based Solely On Unsupported, Conclusory Allegations. ..................................................... 12

     B.     Plaintiffs Have Failed to Identify the Contracts That Defendants Are Alleged to Have Breached ............................................................... 14

     C.     Plaintiffs' Claim For Injunctive Relief Is Invalid as Matter of Law ........ 15

IV.     Even if pled as an ERISA Remedy, The Claims Alleged in Count Four Must Be Dismissed .................................................................................. 17

V.     The Court Lacks Personal Jurisdiction Over Defendants CIGNA Corporation and CIGNA HealthCare and the Complaint Against Them Should be Dismissed Pursuant to Rule 12 (b)(2) .................................................. 22

     A.     The Court Lacks Personal Jurisdiction Over  CIGNA Corporation, Which Lacks  Minimum Contacts With New Jersey ............................... 24

     B.     The Court Lacks Personal Jurisdiction Over "CIGNA Healthcare," a Non-Juridical Entity. ......................................................................... 27

CONCLUSION ............................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Aetna Health Inc. v. Davila,
 542 U.S. 200 (2004)............................................................................3, 6, 7, 9

Alexander v. CIGNA Corporation,
 991 F. Supp. 427 (D.N.J. 1998) ..........................................................25, 26

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009).....................................................................3, 4, 12, 13

Bell Atl. Corp. v. Twombly,
 127 S. Ct. 1955 (2007)...............................................................................passim

Burger King Corp. v. Rudzewicz,
 471 U.S. 462 (1985)...................................................................................23

Campbell v. PMI Food Equip. Group, Inc.,
 509 F.3d 776 (6th Cir. 2007) ...................................................................14

Chang v. Life Ins. Co. of No. Am.,
 Civil Action No. 08-0019 (GEB), 2008 U.S. Dist. Lexis 46815 (D.N.J. June 17,
 2008) ...........................................................................................................17, 20

Clendenin v. Wells Fargo Bank, N.A.,
 Civil Action No: 09-00557 (JRG), 2009 U.S. Dist. LEXIS 109952 (S.D. W.
 Va. Nov. 24, 2009) ....................................................................................15

D'Amico v. CBS Corporation,
 297 F.3d 287 (3d Cir. 2002) .....................................................................19, 20, 21

Early v. U.S. Life Ins. Co. in the City of New York,
 No. 05-4696, 2007 U.S. App. LEXIS 6870 (3d Cir. Mar. 22, 2007) ........10

eBay Inc. v. MercExchange, L.L.C.,
 547 U.S. 388 (2006)...................................................................................16

Finocchiaro v. Squire Corrugated Container Corp.,
 Civil Action No. 05-5154 (SRC), 2007 U.S. Dist. LEXIS 12642 (D.N.J. Feb.
 22, 2007) .....................................................................................................7

FMC Corp. v. Holliday,
 498 U.S. 52 (1990).....................................................................................7, 14

Ford v. Unum Life Ins. Co. of Am.,
 No. 08-4191, 2009 U.S. App. LEXIS 24514 (3d Cir. Nov. 9, 2009) ........10

Forsyth v. Humana, Inc.,
   114 F.3d 1467 (9th Cir.) cert. denied, 522 U.S. 996 (1997) .......................................21

Geissal v. Moore Med. Corp.,
   338 F.3d 926 (8th Cir. 2003), cert. denied, 540 U.S. 1181 (2004) ...........................18

Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La. Sys.,
   286 F. App'x 864 (5th Cir. 2008) ...................................................................14

Great West Life & Annuity Ins. Co. v. Knudson,
   534 U.S. 204 (2002) ......................................................................................21

Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey,
   Civil Action No. 06-0462 (JAG), 2006 U.S. Dist. LEXIS 91427 (D.N.J. Dec.
   19, 2006) ......................................................................................................21

Harrow v. Prudential Ins. Co. of Am.,
   279 F.3d 244 (3d Cir. 2002) ...............................................................18, 19, 21

Heasley v. Belden & Blake Corp.,
   2 F.3d 1249 (3d Cir. 1993) .................................................................................6

Helicopteros Nacionales de Colombia, S.A. v. Hall,
   466 U.S. 408  (1984) ........................................................................................23

Howard Delivery Serv. v. Zurich Am. Ins. Co.,
   547 U.S. 651 (2006) ..........................................................................................6

Illingworth v. Nestle U.S.A.,
   926 F. Supp. 482 (D.N.J. 1996) ........................................................................8

In re Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir. 1997) ............................................................................5

In re Samsung DLP TV Class Action Litig.,
   Civil Action No. 07-2141 (GEB), 2009 U.S. Dist. LEXIS 100065 (D.N.J. Oct.
   27, 2009) ......................................................................................................14

Ingersoll-Rand Co. v. McClendon,
   498 U.S. 133 (1980) ..........................................................................................7

Int'l Shoe Co. v. Washington,
   326 U.S. 310 (1945) ........................................................................................23

Jemez Agency,
   866 F. Supp. 1340 (D.N.M. 1994) ..................................................................26

Katz v. Comprehensive Plan of Group Ins.,
   197 F.3d 1084 (11th Cir. 1999) ......................................................................21

Kehm Oil Co. v. Texaco, Inc.,
    537 F.3d 290 (3d Cir. 2008) ................................................................23

Kling v. ADC Group Long-Term Disability Plan,
    Civil Action No. 04-2626 (PAM), 2004 U.S. Dist. LEXIS 21045 (D. Minn.
    Oct. 14, 2004) ......................................................................................26

Larocca v. Borden, Inc.,
    276 F.3d 22 (1st Cir. 2002)...................................................................18

Lopez v. Beard,
    333 F. App'x 685 (3d Cir. 2009) .......................................................4, 25

Matinchek v. John Alden Life Ins. Co.,
    93 F.3d 96 (3d Cir. 1996) .......................................................................6

McCoy v. Board of Trustees of Laborers' Int'l. Union Local No. 222,
    188 F. Supp. 2d 461 (D.N.J. 2002), aff'd, 60 F. App'x 396 (3d Cir. 2003) .............19

Mellon Bank PSFS, Nat'l Assn. v. Farino,
    960 F.2d 1217 (3d Cir. 1992) ...............................................................23

Metcalfe v. Renaissance Marine, Inc.,
    566 F.3d 324 (3d Cir. 2009) ...........................................................23, 24

Metropolitan Life Ins. Co. v. Massachusetts,
    471 U.S. 724 (1985)................................................................................7

Morley v. Avaya, Inc. Long Term Disability Plan,
    Civil Action No. 04-409 (MLC) 2006 U.S. Dist. LEXIS 53720  (D.N.J. Aug. 3,
    2006) .................................................................................................17, 19

N.V.E., Inc. v. Day,
    Civil Action No. 07-4283 (GEB), 2009 U.S. Dist. LEXIS 72934 (D.N.J. Aug.
    13, 2009) ..............................................................................................16

Pane v. RCA Corp.,
    868 F.2d 631 (3d Cir. 1989) .................................................................10

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) .............................................................4, 14

Pilot Life Ins. Co. v. Dedeaux,
    481 U.S. 41 (1987).........................................................................6, 7, 11

Pro Sports Inc. v. West,
    639 F. Supp. 2d 475 (D.N.J. 2009) .......................................................23

Pryor v. NCAA,
    288 F.3d 548 (3d Cir. 2002) (citing 62 Fed. Proc., L. Ed. § 62:508).......................27

Pryzbowski v. U.S. Healthcare, Inc.,
    245 F.3d 266 (3d Cir. 2001) ...................................................................10, 11

Ream v. Frey,
    107 F.3d 147 (3d Cir. 1997) ...........................................................................20

Riley v. Potter,
    Civil Action No. 08-5167 (SDW), 2010 U.S. Dist. LEXIS 1053 (D.N.J. Jan. 7,
    2010) ...........................................................................................................5, 13

Roman v. Jeffes,
    904 F.2d 192 (3d Cir. 1990) .............................................................................4

Schmelzle v. Unum Life Ins. Co. of Am.,
    Civil Action No. 08-0734 (AET), 2008 U.S. Dist. LEXIS 63627............................27

Scott v. Gulf Oil Corp.,
    754 F.2d 1499 (9th Cir. 1985) ..........................................................................8

Shandex Indus. v. Vent Right Corp.,
    Civil Action No. 09-4148 (WHW), 2009 U.S. Dist. LEXIS 119450  (D.N.J.
    Dec. 23, 2009)..................................................................................................22

Silent Drive, Inc. v. Strong Indus., Inc.,
    326 F.3d 1194 (Fed. Cir. 2003) .......................................................................23

Smitley v. CIGNA Corp.,
    640 F. Supp. 397 (D. Kan. 1986)......................................................................26

Spuglio v. Cabaret Lounge,
    No. 09-2195, 2009 U.S. App. LEXIS 20398 (3d Cir. Sept. 14, 2009) ....................23

Tolson v. Avondale Indus., Inc.,
    141 F.3d 604 (5th Cir. 1998) ...........................................................................21

Turner v. Fallon Cmty. Health Plan, Inc.,
    127 F.3d 196 (1st Cir. 1997) cert. denied, 523 U.S. 1072 (1998) ..........................20

Twp. of W. Orange v. Whitman,
    8 F. Supp. 2d 408 (D.N.J. 1998) .........................................................................5

Varity Corp. v. Howe,
    516 U.S. 489 (1996)......................................................................................18, 19

Wald v. Southwestern Bell Corp. Customcare Med. Plan,
    83 F.3d 1002 (8th Cir. 1996) ...........................................................................21

**Statutes**

29 U.S.C. § 1002(1) ............................................................................................6

29 U.S.C. § 1101 ................................................................................................3

29 U.S.C. § 1132(a) ...........................................................................................6

29 U.S.C. § 1132(a)(1) .....................................................................................21

29 U.S.C. § 1132(a)(3) ................................................................................17, 19

29 U.S.C. § 1144(a) ...........................................................................................7

29 U.S.C. § 1144(b)(2)(A) .................................................................................8

**Other Authorities**

H.R. Conf. Rep. No. 93-1280, at 327 (1974), reprinted in 1974 U.S.C.C.A.N.
    5038, 5107) ...............................................................................................10

**Rules**

29 C.F.R. §   29 CFR 2560.503-1 .....................................................................13

Fed. R. Civ. P. 4(e) ..........................................................................................22

Fed. R. Civ. P. 8 ........................................................................................passim

Federal Rule of Civil Procedure 12(b)(6) ....................................................passim

Federal Rule of Civil Procedure 8(a)(2) .......................................................3, 4, 5, 13

N.J. Civil Practice Rule 4:4-4(b) .....................................................................22

Rule 12(b)(2) ................................................................................................1, 22

Defendants, CIGNA Corporation and Connecticut General Life Insurance Company ("CGLIC") (collectively, "Defendants"),[1] through their attorneys, Gibbons P.C., submit this memorandum of law in support of their Motion to Dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants respectfully request that the motion be granted and the Complaint against them be dismissed in its entirety.

## PRELIMINARY STATEMENT

This matter is a simple coverage dispute regarding "various health care plans and policies" allegedly issued and/or administered by Defendants.  (See, e.g., Complaint, doc. 1 at ¶ 58).  Plaintiffs, who have allegedly provided chiropractic services to individuals covered under such policies, contend that Defendants have wrongfully refused to reimburse them for the costs of performing a procedure known as "manipulation under anesthesia ("MUA")."[2]  Plaintiffs support their claims with references to treatment provided to three unidentified insureds and claims for reimbursement submitted under three unidentified insurance policies, (doc. 1, ¶¶ 25-51).  Plaintiffs contend that Defendants' refusal to pay those claims constitutes a breach of Defendants' obligations under those unspecified insurance policies, and assert claims for "breach of contract" and "breach of fiduciary duty."  (Id. at ¶¶ 62-75).  Plaintiffs claim that Defendants'

---

[1]  While "CIGNA Healthcare" has also been named as a defendant, there is no such juridical entity, as more fully set forth herein.  See Section I(B), below.

[2]  There appears to be some confusion in the complaint regarding the procedure at issue.  In the general allegations, plaintiffs refer to "manipulation under anesthesia" or "MUA."  In the particular allegations relating the so-called representative class members, however, the procedures alleged involve multiple body parts (i.e., serial treatment sessions).  This procedure is one known as "multiple-site manipulation under anesthesia" or "MMUA."  MMUA is treated differently under the Plan terms and in the medical literature than MUA.  MMUA is considered experimental and not medically necessary and all rights are reserved regarding coverage for this procedure.

alleged breach of contract entitles them to a declaratory judgment, damages and a permanent injunction prohibiting Defendants from ever refusing to reimburse insureds for MUA procedures in the future.  (Id. at ¶¶ 52-75).  Plaintiffs complaint fails for a multitude of reasons and must be dismissed.

The Court does not have personal jurisdiction over Defendants CIGNA Corporation or CIGNA Healthcare.  CIGNA Corporation has absolutely no contacts with the State of New Jersey, and CIGNA HealthCare does not exist as a legal entity.  With regard to the remaining Defendant, CGLIC, Plaintiffs have failed to plead their claims with the level of factual detail required by Federal Rule of Civil Procedure 8 and related case law.  For each of their causes of action, Plaintiffs rely almost entirely on unsupported, conclusory statements concerning Defendants' alleged wrongdoing.  For instance, though each of Plaintiffs' claims is based on Defendants' alleged failure to fulfill their obligations under certain insurance policies, Plaintiffs have failed to identify the policies at issue, let alone the contractual provisions that Defendants are alleged to have breached.  Likewise, although Plaintiffs seek a permanent injunction concerning those alleged breaches, Plaintiffs have made no effort to provide a factual basis for their entitlement to such relief (e.g., irreparable harm or lack of an adequate legal remedy).  Because Plaintiffs' claims for reimbursement for certain chiropractic procedures is classically one for monetary damages, it is clear that they cannot do so.

Finally, even if Plaintiffs had pled their claims with the requisite level of factual particularity, the Complaint would still be subject to immediate dismissal as the claims raised therein are preempted by federal law.  The allegations of the Complaint clearly show that Plaintiffs are seeking to recover benefits under certain employer-provided health insurance plans.  All such plans, as well the right to seek relief thereunder, are governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, et seq.  Interpreting

ERISA's comprehensive statutory scheme, the United States Supreme Court has held that any

"state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement

remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

therefore preempted."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).  As it appears that

Plaintiffs seek relief under ERISA-governed health benefits plans,[3] their state-law causes of

action are preempted and must be dismissed.  Based on the foregoing, Defendants respectfully

request that the Court dismiss the Complaint in its entirety.

## LEGAL ARGUMENT

### I.     The Standard Applicable on a Motion to Dismiss Pursuant to Rule 12(b)(6)

An essential function of the complaint is to afford the defendant fair notice of the claim.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "a short and plain

statement of the claim showing that the pleader is entitled to relief."  The United States Supreme

Court's decision in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), however, made clear

that the complaint must "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests."  Id. at 1964.  While "the pleading standard Rule 8 announces does not

require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing

Twombly, 127 S. Ct. at 1964).

Following Twombly's direction, the Third Circuit has acknowledged that situations may

arise where "the factual detail in a complaint is so undeveloped that it does not provide a

---

[3] As set out in greater detail in Section III(D), below, it is impossible for the Court or Defendants
to know for certain if ERISA applies to all of the insureds involved in this matter given
Plaintiffs' failure to identify the insurance policies at issue.

3

defendant the type of notice of claim which is contemplated by Rule 8." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008). The Court of Appeals further stated that in light of the Supreme Court's ruling in <u>Twombly</u>, "[r]ule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief…[and] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." <u>Id.</u> "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Ashcroft</u>, 129 S. Ct. at 1950. Therefore, where a complaint has not alleged sufficient facts to state a plausible, credible claim giving fair notice to the defendant, it will be dismissed.

"Rule 12(b)(6) countenances the dismissal of a suit if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Roman v. Jeffes</u>, 904 F.2d 192, 195 (3d Cir. 1990) (internal quotations and citations omitted). In order to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974. The Supreme Court revisited and endorsed this basic rule in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009). "'A claim has facial plausibility when the plaintiff pleads <u>factual</u> <u>content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Lopez v. Beard</u>, 333 F. App'x 685, 687 (3d Cir. 2009) (quoting <u>Iqbal</u>, 129 S. Ct. at 149) (emphasis added). To that end, a complaint must set forth sufficiently detailed, credible factual allegations which "raise a right to relief above the speculative level." <u>Twombly</u>, 127 S. Ct. at 1964. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Riley v. Potter</u>, Civil Action No. 08-5167 (SDW), 2010

U.S. Dist. LEXIS 1053, *8 (D.N.J. Jan. 7, 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  "If the 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief' as required by Rule 8(a)(2)."[4]  <u>Riley</u>, 2010 U.S. Dist. LEXIS 1053 at **8-9 (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  "Determining whether the allegations in a complaint are 'plausible' is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Riley</u>, 2010 U.S. Dist. LEXIS 1053 at *8 (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

Finally, in reviewing the sufficiency of a Complaint in the context of a motion to dismiss, courts must not accept bald assertions, untenable inferences, or unsupported legal conclusions disguised as factual allegations.  <u>Twombly</u>, 127 S. Ct. at 1964-65  ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citations omitted); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1430 (3d Cir. 1997) ("In deciding a motion to dismiss, a court must take well-pleaded facts as true but need not credit a complaint's 'bald assertions' or 'legal conclusions.'").

## II.     Each of the Causes of Action Alleged in the Complaint is Preempted By ERISA

Although Plaintiffs invoke this Court's federal question jurisdiction under ERISA (Complaint at ¶ 13), each of the causes of action in the complaint is framed under state law.  Moreover, the allegations in the Complaint make clear that the insurance benefits at issue were provided through an employee benefit plan and that each claim alleged is, in fact, a challenge to

---

[4] Likewise, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." <u>Twp. of W. Orange v. Whitman</u>, 8 F. Supp. 2d 408, 413 (D.N.J. 1998).

CGLIC's administration of those plans (although CGLIC's status as a Plan Administrator under ERISA for any given plan is not conceded).

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provide for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (internal citations omitted).  To that end, "ERISA includes . . . a 'civil actions provision,' 29 U.S.C. § 1132(a)(1), which authorizes a participant in 'an employee welfare benefit plan' to recover benefits due to him [or her] under the terms of the plan."  Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 99-100 (3d Cir. 1996) (citing Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1253 n.3 (3d Cir. 1993)).  As the Third Circuit has explained:

> An "employee welfare benefit plan" governed by ERISA is defined as any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

Id. at 100 (quoting 29 U.S.C. § 1002(1)); see also Howard Delivery Serv. v. Zurich Am. Ins. Co., 547 U.S. 651, 660 (2006).

ERISA contains two statutory provisions that preempt state law causes of action.  The first is Section 502(a), 29 U.S.C. § 1132(a) which sets forth a comprehensive civil enforcement scheme and which forecloses any state law claim that falls within its zone of influence.  In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), the Supreme Court described the broad preemptive effect of Section 502(a):

> [T]he detailed provisions of § 502(a) set forth a comprehensive
> civil enforcement scheme that represents a careful balancing of the
> need for prompt and fair claims settlement procedures against the
> public interest in encouraging the formation of employee benefit
> plans.  The policy choices reflected in the inclusion of certain
> remedies and the exclusion of others under the federal scheme
> would be completely undermined if ERISA-plan participants and
> beneficiaries were free to obtain remedies under state law that
> Congress rejected in ERISA.

Id. at 54.

ERISA's second preemption provision, which effectuates what is known as "express preemption," is set out in Section 514(a), 29 U.S.C. § 1144(a).  Section 514 preempts "any and all state laws" that "relate to any employee benefit plan."  The Supreme Court has recognized that express preemption under Section 514(a) is "deliberately expansive."  Pilot Life, 481 U.S. at 46.  Indeed, a state law "relates to" an ERISA benefit plan when "it has a connection with or reference to such a plan," Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985), or when "the existence of [an ERISA] plan is a critical factor in establishing liability."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1980).

Taken together, these two sections give ERISA a preemptive effect with few parallels in this country's laws.  "[A]ny state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."  Davila, 542 U.S. at 209; FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) (quotation omitted) (alteration in original) (ERISA's preemption regime "establishes as an area of federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA.").  Moreover, ERISA's preemptive effect extends to both common law and statutorily based causes of action.  See, e.g., Finocchiaro v. Squire Corrugated Container Corp., Civil Action No. 05-5154 (SRC), 2007 U.S. Dist. LEXIS 12642, ** 7-8 (D.N.J. Feb. 22, 2007) ("'ERISA preemption extends to state common-law causes

of action as well as state regulatory statutes, and claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans.'") (quoting <u>Scott v. Gulf Oil Corp.</u>, 754 F.2d 1499, 1504 (9th Cir. 1985)); <u>Illingworth v. Nestle U.S.A.</u>, 926 F. Supp. 482, 492 (D.N.J. 1996) (noting that the Supreme Court had "rejected the view that common law causes of action or state regulatory statutes are preempted only when they attempt to regulate an area expressly covered by ERISA, such as reporting, disclosure and fiduciary responsibilities," and finding that "[b]ecause [Plaintiff's] claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law.").[5]

The allegations in the Complaint make it clear that Plaintiffs seek relief based on Defendants' alleged refusal to pay benefits under "various health care plans and policies issued and/or administered by [Defendants]."  (<u>See</u>, <u>e.g.</u>, Doc. 1, ¶ 58).  While Plaintiffs have not sued any individual plans for benefits, Plaintiffs expressly assert that each of the three patients described in the Complaint assigned "insurance benefits" to one or more of the Plaintiffs, and it appears that Plaintiffs now seek to stand in the shoes of those healthcare plan beneficiaries. (Doc. 1 at ¶¶ 25-26, 34-35 and 42-43).   Plaintiffs make further reference to a "CIGNA-administered health care plan" (<u>Id.</u> at ¶¶ 28-29 and 37) with respect to "Patient RV" and "Patient AS" and even a passing reference to "the UPS Flexible Benefits Plan" with respect to "Patient RV" (<u>Id.</u> at ¶ 33).

---

[5] ERISA's preemptive scheme, though nearly absolute, does contain certain narrow exceptions, none of which are applicable to the instant case.  Pursuant to the "savings clause" embodied in Section 514(a), 29 U.S.C. § 1144(b)(2)(A), state laws "regulating insurance, banking or securities" remain viable, even if they would otherwise be subject to the preemptive effect of Section 514(a).  Plaintiffs have not raised any claims based on any state law meant to regulate "insurance, banking or securities" and, therefore, the "savings clause" embodied in 29 U.S.C. § 1144(b)(2)(A) is not applicable in this matter.

Plaintiffs allege that Defendant CIGNA Corporation and its subsidiaries provide "health care and related benefits, the majority of which are offered through the workplace, including health care products and service[s]." (Id. at ¶ 8) (emphasis added) (Complaint at ¶ 9). There appears no room for argument that Plaintiffs are claiming benefits under ERISA-governed health benefits plans. Consequently, Plaintiffs' claims are be subject to ERISA's comprehensive statutory scheme.

As noted in the following section, unless and until Plaintiffs plead their claims with the specificity required under Fed. R. Civ. P. 8 and the Twombly line of cases set forth above, it will be impossible for either Defendants or the Court to know exactly which health care plans are at issue. The UPS plan referred to is obviously an employee plan, but even this is not sufficiently specific to permit Defendants to identify the exact plan at issue. It is alleged in the Complaint, however, that a "majority" of the plans are employee benefit plans and the application of ERISA and its preemptive effect is thus established. Each of Plaintiffs' existing claims must be dismissed, as they are completely preempted by that broad statutory scheme. Davila, 542 U.S. at 209. ("[A]ny state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."). Any subsequent efforts to plead state law-based causes of action would therefore be frivolous.

Count One of the Complaint claims entitlement to a Declaratory Judgment. As discussed infra, no legal basis for this claim is alleged except that that denial of coverage for MUA procedures is "improper" and that MUA is allegedly recognized by the American Medical Association. No basis in ERISA is pled as entitling Plaintiffs to this relief. Thus, although the Complaint is mute on the issue, Plaintiffs apparently rely on state common law grounds for this

relief and it must be dismissed as obviously aimed directly at CGLIC's alleged administration of employee health benefits.

Counts Two and Three allege breach of contract, apparently for a denial of benefits although that is not entirely clear, and contain claims for injunctive relief and money damages, respectively.  Well-settled federal law dictates that a state law claim for benefits under an ERISA plan is preempted.  The Third Circuit examined this very issue in Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001).  The Court of Appeals found that legislative history compelled the conclusion that a state law claim for benefits under an ERISA plan was preempted; the Court of Appeals quoted the conference report "which stated that all suits 'to enforce benefit rights under the plan or to recover benefits under the plan . . . are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.'"  Id. at 271 (quoting H.R. Conf. Rep. No. 93-1280, at 327 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5107) (alteration in original);  see also Ford v. Unum Life Ins. Co. of Am., No. 08-4191, 2009 U.S. App. LEXIS 24514, at *4 (3d Cir. Nov. 9, 2009) (citing Pryzbowski in affirming lower court's determination that plaintiff's state law claims, including breach of contract, were preempted); Early v. U.S. Life Ins. Co. in the City of New York, No. 05-4696, 2007 U.S. App. LEXIS 6870, at *4 (3d Cir. Mar. 22, 2007) (citing Pryzbowski in affirming dismissal of plaintiff's breach of contract claim).

It is clear that breach of contract claims brought to enforce the terms of a policy or plan maintained as an employment benefit under ERISA are preempted.  Pryzbowski, 245 F.3d at 278 ("[S]uits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a).");  Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) (finding that

ERISA preempts a state law breach of contract claim which has "connection with or reference to" ERISA covered plan).  The Counts of the Complaint based upon breach of contract, "no matter how couched," Pryzbowski, 245 F.3d at 273, are plainly and unequivocally preempted and should be dismissed on that ground.

Count Four of the Complaint alleges liability for breach of fiduciary duty.  Again, no basis in ERISA is alleged.  As discussed infra, if this claim had been pled under ERISA it would be invalid as a matter of law, because it is redundant to a claim for benefits.  The Complaint advances as grounds for its fiduciary duty claim that:  "By arbitrarily deeming MUA medical procedures to be experimental, investigatory, and/or not medically necessary, and by therefore denying reimbursement for those procedures, Cigna has, and continues to, systematically breach its fiduciary duty to Plaintiffs and to the Class."  (Complaint ¶ 71.)  The claim is directed squarely at CGLIC's alleged administration of ERISA-governed plans.  It is an overt clam for benefits under ERISA-governed plans.  As a state law claim, it is plainly preempted.  Here, too, the Third Circuit's language in Pryzbowski has obvious application — such claims are preempted "no matter how couched." 245 F.3d at 273  To permit such a claim to go forward would directly contrary to the "comprehensive civil enforcement scheme" of the ERISA statute. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).  Therefore, this claim must be dismissed.

**III.    Plaintiffs Have Failed to Plead Their Claims With Sufficient Particularity**

    **A.    Each of Plaintiffs' Causes of Action Are Based Solely On Unsupported, Conclusory Allegations.**

"Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."   Ashcroft, 129 S. Ct. at 1950.  Here, however, "conclusions" are all that Plaintiffs offer when describing their claims against Defendants.  In Count One, Plaintiffs broadly allege that "[CIGNA] has engaged in a systematic course of improperly denying reimbursements for MUA medical procedures, despite the fact that such procedures are properly prescribed and performed, and are recognized by the American Medical Association recognizes [sic] as non-experimental, non-emerging medical procedures." (Complaint at ¶¶ 53).  No legal basis is advanced at all in support of this Count.  Counts Two and Three allege merely that "[CIGNA's] denial of reimbursement for MUA procedure [sic] constitutes a breach of its contractual obligations under the various health care plans and policies issued and/or administered by [CIGNA]." (Id. at ¶¶ 58, 64).  Count Four alleges only that "[b]y arbitrarily deeming MUA medical procedures to be experimental, investigatory, and/or not medically necessary… [CIGNA] has… systematically breach [sic] its fiduciary duty to Plaintiffs to the Class." (Id. at ¶ 71).

Nowhere in the Complaint is there any explanation about how Defendants' alleged denials of reimbursement requests were "improper."  It is not enough to state baldly that denial of coverage for MUA is a breach of contractual obligations.  There is no allegation as to what that obligation was, what health care policy was at issue and certainly no specification of which contractual terms Defendants allegedly breached.  Plaintiffs' allegations regarding Defendants' wrongdoing are conclusory and should be disregarded for Rule 12(b)(6) purposes.  See, e.g., Twombly, 127 S. Ct. at 1964-65.

The specifics that do appear in the Complaint only deepen the confusion.  It is alleged that the American Medical Association has recognized MUA procedures.  But the American Medical Association does not set the terms of any employee benefit plan.  As noted, Plaintiffs freely refer to coverage for MUA procedures as the gravamen of their claim.  But the procedures they actually describe in the allegations specific to the so-called "Representative Cases" are MMUA procedures, multiple-site manipulation under anesthesia, which is treated quite differently for coverage purposes.

The Complaint repeatedly states that "the requirement of an arduous denial of payment appeals process effectively denies reimbursement to entitled providers and/or patients who may be unwilling or unable to undertake the cost and effort of the appeals process."   No indication appears as to how CGLIC's appeals process offends Plaintiffs, except that it is too "arduous." The internal appeal process within CGLIC is required by federal regulations promulgated under ERISA, and these regulations closely govern how these appeals are to be handled.  29 C.F.R. § 29 CFR 2560.503-1.  No allegation is provided as to how CGLIC's appeals process deviates from applicable legal requirements.  Nor is it clear whether any as-yet-unstated deviation would support a private cause of action.

More specificity is required, even under the low pleading threshold of Fed. R. Civ. P. 8. As noted above, where a complaint "'pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Riley, 2010 U.S. Dist. LEXIS 1053 at *8 (quoting Iqbal, 129 S. Ct. at 1949).  Furthermore, where a Plaintiff's factual allegations "'do not permit the court to infer more than the mere possibility of misconduct,' the complaint should be dismissed for failing to 'show[] that the pleader is entitled to relief' as required by Rule 8(a)(2).'"  Riley, 2010 U.S. Dist. LEXIS 1053 at

**8-9 (quoting Iqbal, 129 S. Ct. at 1950).  None of the four Counts included in Plaintiffs' Complaint is pled with the particularity required under Fed. R. Civ. P. 8 and applicable case law, and the Complaint should thus be dismissed in its entirety.

>    **B.    Plaintiffs Have Failed to Identify the Contracts That Defendants Are Alleged to Have Breached**

As set out in detail above, Fed. R. Civ. P. 8 requires that a Complaint give the defendants fair notice of both the claims that a plaintiff seeks to bring as well as the grounds upon which those claims are based.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where a plaintiff alleges a breach of contract, both Rule 8 and notions of common sense demand that the Complaint identify both the contract at issue and the specific contractual provisions that the defendant is alleged to have breached.  Plaintiffs have failed to satisfy this basic rule of pleading.

As the United States District Court for the District of New Jersey has made clear, "[i]t is axiomatic that contract-based claims that do not adequately identify the contract at issue fail to 'set forth fair notice' of a claim and 'the grounds upon which it rests' and do not 'raise a right to relief above the speculative level.'"  In re Samsung DLP TV Class Action Litig., Civil Action No. 07-2141 (GEB), 2009 U.S. Dist. LEXIS 100065, * 17 (D.N.J. Oct. 27, 2009) (finding that because the plaintiffs had failed to sufficiently identify the contracts upon which their breach of contract claims were based, those claims had to be dismissed); see also Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La. Sys., 286 F. App'x 864, 870 (5th Cir. 2008) (noting that the plaintiffs' breach of contract claim failed for a variety of reasons, including that plaintiffs did not identify the content of the contractual provisions at issue); Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 787 (6th Cir. 2007) (finding that the plaintiffs' breach of

contract claim had to be dismissed where the plaintiffs failed to identify the contractual provision that the defendants were alleged to have breached); Clendenin v. Wells Fargo Bank, N.A., Civil Action No: 09-00557 (JRG), 2009 U.S. Dist. LEXIS 109952 (S.D. W. Va. Nov. 24, 2009) (same).

In Counts Two and Three of the Complaint, Plaintiffs contend that Defendants have breached certain contracts with CIGNA insureds.   In Count Four of the Complaint, Plaintiffs allege that Defendants assumed a fiduciary duty by virtue of its role "[a]s an administrator of health care plans pursuant to which Plaintiffs provide health care services."  (Doc. 1, ¶ 70). Defendants' alleged position as an "administrator" of health care plans can only be based on a contractual relationship.

Despite the fact that Plaintiffs' seek a variety of relief based on Defendants' alleged performance under certain contracts, Plaintiffs have failed to sufficiently identify the contracts at issue, let alone the contractual provisions that Defendants are alleged to have breached.  Instead, Plaintiffs simply mention the alleged CIGNA insureds by their initials (i.e., "Patient RV," "Patient AS").  Given the number of CIGNA Corporations' healthcare related subsidiaries, and the number of customers they serve, it is impossible for Defendants to determine which insurance policies are at issue solely by reference to the initials Plaintiffs have provided.  Every Count of Plaintiffs Complaint plainly lacks the requisite specificity and must be dismissed.

### C.   Plaintiffs' Claim For Injunctive Relief Is Invalid as Matter of Law.

In Count Two of the Complaint, Plaintiffs allege that CIGNA's "denial of reimbursement requests for MUA procedure [sic] constitutes a breach of its contractual obligations under various health care plans and policies issued and/or administered by CIGNA." (Doc. 1, ¶ 58). Plaintiffs seek an order "permanently enjoining CIGNA from automatically denying

reimbursement for MUA medical procedures." (Doc. 1, ¶ 61). Both as a matter of pleading, and under well-settled principles of equity, this claim must be dismissed.

The United States Supreme Court recently clarified the standards applicable with regard to applications for permanent injunctions:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); accord N.V.E., Inc. v. Day, Civil Action No. 07-4283 (GEB), 2009 U.S. Dist. LEXIS 72934, **16-17 (D.N.J. Aug. 13, 2009). Here, Plaintiffs have not and cannot plead that they lack an adequate legal remedy to recover their alleged damages or that they would suffer some irreparable harm in the absence of injunctive relief.

The crux of Plaintiffs' claims against Defendants is that Defendants allegedly refused to reimburse Plaintiffs for the cost of certain chiropractic services (it is unclear which ones), in violation of some contractual obligations (which are not specified). The allegations for each of Plaintiffs' "representative cases" follow that pattern. (Doc. 1, ¶¶ 25-51). Plaintiffs allege that by virtue of an assignment from Defendants' insureds they are entitled to reimbursement for those services. (Id. at ¶¶ 26, 35,43). The claim is for monetary damages and nothing more.

Plaintiffs cannot fairly claim that they lack an adequate legal remedy to recover those costs. See eBay Inc., 547 U.S. at 391. To confirm this, the Court need not look further than Count Three of the Complaint, in which Plaintiffs seek to recover monetary damages for the very same alleged breach of contract that underlies Plaintiffs' claim for injunctive relief. (Id. at ¶¶ 62-

68).  Indeed, it is alleged that "Plaintiffs and the Class have been damaged in an amount to be determined at trial but believed to be in excess of $5 million."

Finally, Plaintiffs seek an injunction governing future benefit determinations.  This request for relief contains several flaws.  Plaintiffs' standing in this matter derives from assignments provided by patients who have <u>already</u> been treated.  Plaintiffs cannot plead that their patients assigned to them future claims.  Any such claims might relate to services provided by completely different doctors.  By their own admission, Plaintiffs are out-of-network providers and can have no expectation in their own right regarding reimbursement for future treatment of CGLIC's insureds.  Given that Plaintiffs simply cannot demonstrate that they have suffered some irreparable harm and lack an adequate legal remedy, Count Two of the Complaint should be dismissed with prejudice.

## IV.    Even if pled as an ERISA Remedy, The Claims Alleged in Count Four Must Be Dismissed

Section 502(a)(3) of ERISA provides a highly specialized cause of action for breach of fiduciary duty.  29 U.S.C. § 1132(a)(3).  The ERISA cause of action does not apply under the facts as alleged here, however.  Thus, even if this cause of action were pled as an ERISA claim it would have to be dismissed as a matter of law.

It is hornbook ERISA law that a claim for breach of fiduciary duty must be dismissed where it is raised in the context of a suit for benefits.  This proposition has been repeatedly endorsed by the United States Supreme Court and by Circuit Courts of Appeal and District Courts around the country, including this District.  <u>E.g.</u>, <u>Chang v. Life Ins. Co. of No. Am.</u>, Civil Action No. 08-0019 (GEB), 2008 U.S. Dist. Lexis 46815 (D.N.J. June 17, 2008); <u>Morley v. Avaya, Inc. Long Term Disability Plan</u>, Civil Action No. 04-409 (MLC) 2006 U.S. Dist. LEXIS 53720, *66-70 (D.N.J. Aug. 3, 2006).

The Supreme Court has held that Section 502(a)(3) is "a catch-all" permitting "appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (emphasis added). Consequently, where a claim for benefits under Section 502(a)(1)(B) will make the claimant whole, the claimant cannot seek equitable relief under Section 502(a)(3). Larocca v. Borden, Inc., 276 F.3d 22, 28 (1st Cir. 2002); Geissal v. Moore Med. Corp., 338 F.3d 926, 933 (8th Cir. 2003), cert. denied, 540 U.S. 1181 (2004). The federal courts treat it as basic and settled ERISA doctrine that a plaintiff who can pursue benefits under the plan pursuant to Section 502(a)(1) has an adequate remedy under the plan and cannot pursue a further remedy under Section 502(a)(3). Id.

The Third Circuit has fully embraced this reasoning. In Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244 (3d Cir. 2002), plaintiff attempted to cast a benefits claim as a fiduciary duty claim to avoid the rule of exhaustion.[6] The Court of Appeals rejected this attempt, finding that "Mrs. Harrow does not allege facts that, if proven, establish a breach of fiduciary duty independent of denial of benefits . . . . As the District Court observed, the language of the complaint itself demonstrates that Mrs. Harrow's claim was actually premised on the plan administrators' failure to furnish plaintiff with insurance coverage for Viagra." Id. at 254. The Third Circuit in Harrow stated: "A claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an

---

[6] Plaintiff Harrow had apparently pled the fiduciary duty claim for tactical reasons. The Third Circuit requires a claimant who merely seeks benefits to exhaust internal plan administrative remedies before proceeding to federal court, but excuses the exhaustion requirement for allegations involving breach of fiduciary duty and other violations of the statute.

ERISA-regulated plan rather than upon an interpretation and application of ERISA." <u>Id.</u> (internal quotation omitted).

Later in the same year, the Third Circuit applied its holding in Harrow to a claim that a defendant had violated fiduciary duties set forth of Section 404 of ERISA. <u>D'Amico v. CBS Corporation</u>, 297 F.3d 287 (3d Cir. 2002). Those duties, it was found, were "synonymous with a claim to enforce the terms of a benefits plan" and the Court of Appeals had no trouble recognizing that "a breach of fiduciary duty under section 404--is actually a claim based on denial of benefits under the terms of a plan." <u>Id.</u> at 291.

In <u>Morley</u>, 2006 U.S. Dist. LEXIS 53720, Judge Cooper applied this classic analysis, rejecting the argument that equitable relief against the threat of future claim denials could support a claim under Section 502(a)(3):

> Section [502(a)(3)] provides that a civil action may be brought 'by a participant, beneficiary or fiduciary (a) to enjoin any act or practice which violates and provision of this subchapter (B) to obtain other appropriate equitable relief (i) to redress such violation[,] or (ii) to enforce any provisions of this subchapter.' Thus, the relief available under Section [502(a)(3)(B)] is limited to 'appropriate equitable relief,' of which 'where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate."

<u>Id.</u> (quoting Section 502(a)(3), 29 U.S.C. 1132(a)(3) and <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996)) (second alteration in original). "This form of relief does not constitute 'additional relief' otherwise not provided for in Section [502(a)(1)]. Instead, this type of relief is specifically provided for and contemplated by the language in Section [502(a)(1)]." <u>Id.</u> at *68-69. Likewise, in <u>McCoy v. Board of Trustees of Laborers' Int'l. Union Local No. 222</u>, 188 F. Supp. 2d 461 (D.N.J. 2002), <u>aff'd</u>, 60 F. App'x 396 (3d Cir. 2003), a beneficiary attempted to allege a breach of fiduciary duty based upon misrepresentations by the Trustees that cost him his

19

benefits.  This attempt failed when the Court held that--regardless of the conduct complained of--a beneficiary could not assert a claim for breach of fiduciary duty under Section 502(a)(3) when the beneficiary could receive full relief under Section 502(a)(1).  Id. at 472 n.10.

The "vast majority" of bona fide fiduciary duty claims by individual beneficiaries involve either discrimination claims under Section 501 or failure to provide required summary plan descriptions, issues that are completely irrelevant to the instant proceeding.  D'Amico, 297 F.3d at 291.  The distinction is highlighted by an examination of Ream v. Frey, 107 F.3d 147 (3d Cir. 1997).  In Ream, an ERISA Trustee transferred plan assets to a successor that was failing and that failed to make required contributions to the plan.  The Trustee also did not notify beneficiaries of the transfer or of the successor's difficulties.  Ream, did not involve a simple denial of benefits, but rather involved breach of duties that were clearly collateral to the right of the beneficiary to receive payments under the terms of the plan.  While the Third Circuit found that the beneficiary stated a cause of action,  the court also warned that '[w]here Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided."  Id. at 152.

In the Chang case, Chief Judge Brown noted that the majority view is the one adopted by Judge Cooper in Morely: where an ERISA suit is premised on a denial of benefits, injunctive relief under 502(a)(3) is not allowed.  2008 U.S. Dist. LEXIS 46815, at *5-6. In fact, there is an overwhelming weight of authority from around the country placing beyond legitimate dispute the proposition that where an ERISA suit is premised on a denial of benefits injunctive relief under 502(a)(3) is not allowed.  See, e.g., Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997)   (beneficiary denied benefits could not sue under Section 502(a)(3) since the claim was 'specifically addressed by [Section 502(a)(1) ]"), cert. denied, 523 U.S. 1072 (1998);

Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir.)  ("[e]quitable relief under section 1132 [502] (a)(3) is not 'appropriate' because section 1132 [502] (a)(1) provides an adequate remedy in this case"), cert. denied, 522 U.S. 996 (1997); Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996); Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1088-89 (11th Cir. 1999) (even the unrealized prospect of relief under Section 502(a)(1) renders relief under Section 502(a)(3) unavailable); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate."); see also Great West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) (plan could not bring claim for equitable relief under 502(a)(3) where relief sought was legal).

In this case, the Complaint as a whole leaves no room for doubt that the relief Plaintiffs seek is payment of the plan benefit for a particular medical procedure.  Plaintiffs allege no conduct that is not also alleged in connection with the claims for plan benefits.  "[A] claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA."  Harrow, 279 F.3d at 254 (internal quotation omitted); D'Amico v. CBS Corp., 297 F.3d 291-92 (3d Cir. 2002).   Plaintiffs may or may not eventually replead their Complaint under ERISA Section 502(a)(1), 29 U.S.C. § 1132(a)(1).  See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Civil Action No. 06-0462 (JAG), 2006 U.S. Dist. LEXIS 91427, *7 (D.N.J. Dec. 19, 2006) (plaintiff's burden to amend the complaint where claims are preempted under ERISA).   However, currently pled, Count Four for breach of fiduciary duty must be dismissed.

**V.    The Court Lacks Personal Jurisdiction Over Defendants CIGNA Corporation and CIGNA HealthCare and the Complaint Against Them Should be Dismissed Pursuant to Rule 12 (b)(2).**

All Defendants assert that the Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  Defendants CIGNA Corporation and CIGNA HealthCare raise the additional ground under Rule 12(b)(2) that they should be dismissed from this action because they are not subject to the personal jurisdiction of this Court.  CIGNA Corporation does not have sufficient minimum contacts with the State of New Jersey to subject it to personal jurisdiction.  Defendant "CIGNA HealthCare," is an entity that simply does not exist.

As a threshold matter, when a defendant moves to dismiss for lack of personal jurisdiction, the burden falls upon the Plaintiff to come forward with sufficient facts to establish that jurisdiction is proper.  Shandex Indus. v. Vent Right Corp., Civil Action No. 09-4148 (WHW), 2009 U.S. Dist. LEXIS 119450 at *4 (D.N.J. Dec. 23, 2009).  Fed. R. Civ. P. 4(e) permits a district court to exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the state in which the district court is located.  New Jersey law, in turn, allows for jurisdiction over non-residents to the full extent permitted by the United States Constitution.  See N.J. Civil Practice Rule 4:4-4(b); see also, Shandex, 2009 U.S. Dist. LEXIS 119450 at *4 ("New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution").

A forum's exercise of jurisdiction over non-resident defendants is subject to well-defined constitutional limits.  "The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' Having minimum contacts with another state provides 'fair warning' to a defendant that he or

she may be subject to suit in that state." Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  When these basic constitutional principles are viewed in conjunction with New Jersey's broad approach to "long-arm" jurisdiction, the result is clear:  this Court may only exercise personal jurisdiction over non-resident defendants that have "sufficient minimum contacts" with New Jersey.  See, e.g., Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 334 (3d Cir. 2009).

In conducting a "minimum contacts" analysis, a court must determine whether a defendant's contact with the forum at issue is sufficient to subject that party to an exercise of either "general jurisdiction" or "specific jurisdiction."  Metcalfe, 566 F.3d at 335.  A court in a particular forum may exercise "general jurisdiction" over a defendant where he or she has made "continuous and systematic" contacts with that forum, whether or not those contacts are related to the plaintiff's cause of action.  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416  (1984)).  If general jurisdiction exists, a forum may "assert personal jurisdiction over an out-of-court defendant 'even when the cause of action has no relationship with those contacts.'"  Pro Sports Inc. v. West, 639 F. Supp. 2d 475, 480 (D.N.J. 2009) (quoting Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003)).

Specific jurisdiction exists only if the defendant has "'purposefully directed' his or her activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Where a court enjoys only specific jurisdiction over a non-resident defendant, that jurisdiction is limited to "actions arising out of the defendant's contact with the forum."  Spuglio v. Cabaret Lounge, No. 09-2195, 2009 U.S. App. LEXIS 20398, *3 (3d Cir. Sept. 14, 2009) (citing Mellon Bank PSFS, Nat'l Assn. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).

Accordingly, if a defendant's contacts are not sufficient to subject it to general jurisdiction in a forum, then at least one of the defendants' contacts must relate to the plaintiff's claim, thereby allowing the court to exercise specific jurisdiction.  Metcalfe, 566 F.3d at 335.  Here, the Court may not exercise either type of jurisdiction over Defendants CIGNA Corporation  or CIGNA HealthCare.

### A.    The Court Lacks Personal Jurisdiction Over  CIGNA Corporation, Which Lacks  Minimum Contacts With New Jersey

CIGNA Corporation simply does not have <u>any</u> contacts with the State of New Jersey.  It is a Delaware holding company with its  principal place of business located in Philadelphia, Pennsylvania.  <u>See</u> Declaration of Franklin C. Barlow ("Barlow Dec.") ¶ 2.  It is qualified to do business -- as a general business corporation only and  <u>not</u> as an insurance company -- in Delaware, Pennsylvania, New York, Connecticut, and the District of Columbia.  <u>Id.</u>  CIGNA Corporation is not licensed to do business in any other state.  <u>Id.</u>  Plaintiffs are incorrect in alleging that CIGNA Corporation "offers, underwrites and administers commercial health plans," and that CIGNA Corporation "is one of the largest health insurers in the United States." (Doc. 1, ¶ 9.)  CIGNA Corporation is solely a holding company.  Its only business is to own the stock of other companies.  Barlow Dec. ¶ 3.  CIGNA Corporation  is not an insurance company and does not offer insurance products or insurance services to the public.  It has not entered into any agency contracts pursuant to which third parties or agents offer insurance products or services on behalf of CIGNA Corporation.  <u>Id.</u>

Furthermore, CIGNA Corporation does not conduct business, either directly or through any of its subsidiaries, in the State of New Jersey or in any other state.  <u>Id.</u> ¶ 4.  CIGNA Corporation has no office or place of business in the State of New Jersey, nor does it own or lease real property in the State of New Jersey.  <u>Id.</u>  CIGNA Corporation does not conduct

24

business in the State of New Jersey and has never done so.  Id.  CIGNA Corporation has no agents or employees in the State of New Jersey, pays no income tax or other taxes here, and has no bank accounts in the State of New Jersey.  Id.  No person has ever been appointed to accept service of process on behalf of CIGNA Corporation in the State of New Jersey.  Id. ¶ 5. Moreover, CIGNA Corporation is not a party to any contract performable, in whole or in part, within the State of New Jersey, and it has not processed, manufactured, or sold any products, materials, or things which have been used or consumed within the State of New Jersey in the ordinary course of commerce, trade, or use.  Id. ¶ 6-7.

CIGNA Corporation's only connection to New Jersey is through its subsidiaries, some of which do business in the State.  It is well-settled, however, that Plaintiffs may not use the Court's exercise of personal jurisdiction over any of CIGNA Corporation's subsidiaries to invoke the Court's exercise of personal jurisdiction over CIGNA Corporation.  Alexander v. CIGNA Corporation, 991 F. Supp. 427, 443 (D.N.J. 1998).  There is simply no legitimate basis to pierce the corporate veil, and no allegations in the Complaint suffice to state a claim for such relief. Indeed, the only statement in the Complaint is Plaintiffs' unsupported and conclusory allegation concerning "CIGNA's domination and control of its subsidiaries."  (Comp., doc. 1, ¶12).  This is precisely the sort of unsupported legal conclusion that the Supreme Court has  held to be insufficient as a matter of law.  Twombly, 127 S. Ct. at 1964-65.

Numerous courts, including the District of New Jersey, have specifically found an absence of personal jurisdiction over CIGNA Corporation for the reasons stated above.  See, e.g., Alexander, 991 F. Supp. at 443 (D.N.J.) ("[a]ccordingly, this Court does not have jurisdiction over defendant CIGNA Corp. and [plaintiffs'] case against CIGNA Corp. must therefore be dismissed in its entirety"); Gonzalez-Lopez v. CIGNA Group Ins., 609 F. Supp. 2d 161, 164-66

(D.P.R. 2008); <u>Kling v. ADC Group Long-Term Disability Plan</u>, Civil Action No. 04-2626 (PAM), 2004 U.S. Dist. LEXIS 21045 (D. Minn. Oct. 14, 2004); <u>Jemez Agency</u>, 866 F. Supp. 1340 (D.N.M. 1994); <u>Smitley v. CIGNA Corp.</u>, 640 F. Supp. 397, 400 (D. Kan. 1986).

In <u>Kling</u>, the District of Minnesota considered whether it had personal jurisdiction over CIGNA Corporation under the Minnesota long-arm statute (which, like New Jersey's, extends to the limits of the Due Process Clause).   The District Court found that it lacked personal jurisdiction over CIGNA Corporation where the insurer was Life Insurance Company of North America ("LINA").   The fact that "CIGNA" and "CIGNA Group Insurance" appeared on plan documents and correspondence was meaningless, because these are service marks and do not connote an actual entity.  2004 U.S. Dist LEXIS 21045, at *3.  Relying on a declaration of the same Mr. Barlow, the District Court found:

> CIGNA Corporation has no contact to the State of Minnesota.  It is not qualified to conduct business in Minnesota and has never conducted business in Minnesota.   The only link CIGNA Corporation has to Minnesota is that it is the parent corporation of LINA, the apparent insurer in this case.  Such a link is the result of unilateral action of LINA.  This alone is insufficient to establish personal jurisdiction over CIGNA Corporation as CIGNA Corporation and LINA are independent corporate entities.

<u>Id.</u> at *6; <u>see also</u> <u>Alexander</u>, 991 F. Supp. at 443 ("A district court may not exercise jurisdiction over a defendant corporation if the only connection with the state is through that defendant's subsidiaries.").

There is no basis, and no need, for Plaintiffs' suit against CIGNA Corporation.  Liability, if any, for benefits under plans insured by CGLIC will be satisfied by CGLIC.  Conclusory allegations of "dominion and control" by CIGNA Corporation over its affiliates do not change this analysis.   CIGNA Corporation should be dismissed from this lawsuit.

**B.    The Court Lacks Personal Jurisdiction Over "CIGNA Healthcare," a Non-Juridical Entity.**

The Court also lacks jurisdiction over Defendant "CIGNA HealthCare," because no such legal entity exists.  Plaintiffs themselves do not aver that CIGNA HealthCare is a separate legal entity.  At most, the Complaint alleges that "CIGNA HealthCare" is "CIGNA's health care segment" (Complaint, doc. 1, ¶ 11).  Plaintiffs rely on CIGNA Corporation's Form 10K for the year ending on December 31, 2008 for that proposition.  (Id. ¶ 12).  Relevant portions of that Form 10K are attached to this brief as Exhibit A and are available from other public sources ("Form 10K").[7]  A review of that document makes it clear that the term "CIGNA HealthCare" is simply used to refer collectively to healthcare-related products and services offered by its subsidiaries.  See Exhibit A, Form 10K, pp. 54 ("Operating segments generally reflect groups of related products . . ..");  id. at 1-2 ("CIGNA's Health Care segment ("CIGNA HealthCare") offers insured and self-funded medical, dental, behavioral health, vision, and prescription drug benefit plans, health advocacy programs and other products and services that may be integrated to provide individuals with comprehensive health care benefit programs. CIGNA HealthCare also provides disability and life insurance products that were historically sold in connection with certain experience-rated medical products.  These products and services are provided and administered by subsidiaries of CIGNA Corporation.").  The Form 10K also provides a list of

---

[7] The Third Circuit has acknowledged that a court adjudicating a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) may properly consider "documents attached to or submitted with the Complaint . . . [and] documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) (citing 62 Fed. Proc., L. Ed. § 62:508).  The Pryor court noted that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.'"  Id.; see also Schmelzle v. Unum Life Ins. Co. of Am., Civil Action No. 08-0734 (AET), 2008 U.S. Dist. LEXIS 63627 at *5 ("In addition to the complaint, a court may consider material 'integral to or explicitly relied upon in the complaint' without converting a motion to dismiss into one for summary judgment.") (internal citations omitted).

CIGNA Corporation's subsidiaries, and indicates the state in which each of those subsidiaries was formed.  Id. at Exhibit 21 to Form 10K.  As the Form 10K demonstrates, nearly all of those subsidiaries were formed outside of New Jersey.  Id.  Moreover, the Complaint does not contain any specific allegations of activities undertaken by any of CIGNA Corporation's subsidiaries, let alone descriptions of those subsidiaries' activities in New Jersey.

The simple fact is that there is no such entity as "CIGNA HealthCare."  The very document on which Plaintiffs rely shows only that it is a service mark used to describe products and services offered by certain of CIGNA Corporation's subsidiaries, one of which, CGLIC, is not contesting jurisdiction.  No basis exists in the 10K form or elsewhere to assert personal jurisdiction over other subsidiaries or CIGNA Corporation itself based on the use of this service mark.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants CIGNA Corporation and Connecticut General Life

Insurance Company respectfully request that the Complaint be dismissed in its entirety.

Respectfully submitted,

GIBBONS P.C.
*Attorneys for Defendants*
*CIGNA Corporation and*
*Connecticut General Life Insurance Company*

DATED:  January 26, 2010                    BY: <u>s/ Brian J. McMahon</u>
                                                                    Brian J. McMahon