# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROSPECT MEDICAL, P.C. , PREMIER HEALTH CENTER, P.C., SHORE SPINE CENTER & PHYSICAL REHABILITATION, P.C. D/B/A NORTHEAST SPINE AND SPORTS MEDICINE, and NORTHEASTERN SPINAL HEALTH & REHABILITATION, LLC, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, AND CIGNA HEALTHCARE,<br><br>Defendants. | *Document Electronically Filed*<br><br>Civil Action No. 09-5912 (SRC) (MAS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253

-and-

Lawrence P. Eagel (LE 4505)
Jeffrey H. Squire
BRAGAR WEXLER EAGEL & SQUIRE, PC
885 Third Avenue, Suite 3040
New York, NY  10022
Tel: (212) 308-5858
Fax: (212) 486-0462
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Preliminary Statement..................................................................................................1

The Second Amended Complaint ...............................................................................3

LEGAL ARGUMENT: THE MOTION TO DISMISS THE ERISA
CLAIMS SHOULD BE DENIED ...............................................................................4

      I.      The Standard Applicable to a Motion to Dismiss........................................4

      II.     The Second Amended Complaint States Claims Under ERISA ..................5

            A. The Facts Show that CG Life Has Acted in Violation of ERISA..........5

            B. Plaintiffs Need Not Demonstrate Medical
               Necessity in Every Case.......................................................................7

      III.    Plaintiffs Have Pled a Valid Claim for Injunctive Relief............................12

      IV.    Plaintiffs Have Standing to Seek Relief Pertaining to Future Benefits......13

      V.     Plaintiffs Have Dropped Their Breach of Fiduciary Duty Claim...............13

      VI.    Jury Trial....................................................................................................

Conclusion .................................................................................................................14

# **TABLE OF AUTHORITIES**

Cases

*Ashcroft v. Iqbal*
  ___ U.S. ___, 129 S.Ct. 1937 (2009)..................................................................4, 5

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544, 127 S.Ct. 1955 (2007)..................................................................4, 5

*Cerome v. Moshannon Valley Corr. Ctr./Cornell Cos., Slip Op.*
  2010 WL 4948940 (3d. Cir. Dec. 7, 2010) ............................................................5

*DeVito v. Aetna, Inc.*
  536 F. Supp. 2d 523 (D.N.J. 2008) ............................................................9, 10, 13

*Fowler v. UPMC Shadyside*
  578 F.3d 203 (3d Cir. 2009)...................................................................................5

*Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*
  602 F.3d 237 (3d Cir. 2010)...................................................................................4

*In re Majesco Sec. Lit.*
  2009 WL 2846281, No. Civ. A. 05 CV 3557 (D.N.J. Sept. 29, 2006) ...................9

*McTernan v. City of New York*
  577 F.3d 521 (3d Cir. 2009)...................................................................................5

*Nightingale & Assocs., LLC v. Hopkins*
  2008 WL 4848765, Civ. Docket. No. 07-4239 (D.N.J. Nov. 5, 2008)...................9

*Pennsylvania Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*
  2010 WL 1979569 (N.D. Ill. May 17, 2010) .........................................................7

*Phillips v. County of Allegheny*
  515 F.3d 224 (3d Cir. 2008)...................................................................................4

*Tannenbaum v. UNUM Life Ins. Co. of Am.*
  2004 WL 1084658, No. Civ. A. 03-CV-1410 (E.D.Pa. Feb. 27, 2004).................13

*Taylor v. Union Security Ins. Co.*
  332 Fed. Appx. 759 (3d Cir. 2009).......................................................................12

*West Penn. Allegheny Health System, Inc. v. UPMC*
   ___ F.3d ___, 2010 WL 4840093 (3d. Cir. Nov. 29, 2010) ............................................5

Statutes

ERISA § 502(a)(1)(B), USC §1132(a)(1)(B) .........................................................5, 12, 13

ERISA § 502(a)(3), USC §1132(a)(3) ...................................................................6, 12, 13

Rules

Fed. R. Civ. P. 8...............................................................................................................5

Fed. R. Civ. P. 8(a)(2).......................................................................................................5

Fed. R. Civ. P. 12(b)(6).............................................................................................4, 5, 9

Other Authorities

29 CFR Part 2560 (Nov. 10, 2000) ...................................................................................8

**PRELIMINARY STATEMENT**

Plaintiffs Prospect Medical, P.C., Premier Health Center, P.C., Shore Spine Center & Physical Rehabilitation, P.C. d/b/a NorthEast Spine and Sports Medicine, and Northeastern Spinal Health & Rehabilitation, LLC, by their undersigned counsel, submit this memorandum of law in opposition to the Motion to Dismiss the Second Amended Complaint[1] (the "Motion") submitted by defendant Connecticut General Life Insurance Company ("CG Life").[2] For the reasons set forth below, the Court should deny the Motion in its entirety.

Plaintiffs, who are out-of-network healthcare medical providers, consisting of physicians and chiropractors, assert a class action against CG Life on behalf of non-participating health care providers (specifically defined by the plans to include physicians, chiropractors, surgical facilities and hospitals) who have been denied reimbursement for a procedure known as a Manipulation Under Anesthesia or "MUA." The gravamen of the Complaint is that CG Life has instituted a blanket policy of denying coverage for MUA procedures on the grounds that the procedures supposedly are "experimental" and so never medically necessary. (*See.*, *e.g.*, SAC ¶¶30, 44, 54, 59, 64, 70) The Complaint alleges that CG Life does not conduct a review of medical records in order to determine medical necessity in MUA cases, or if it does conduct such a review, the specifics of any given patient's circumstances play no part in CG Life's reimbursement decision, which is dictated by policy to be a denial. (SAC ¶14) The Complaint further alleges that CG Life's policy is arbitrary and capricious, as the medical community in general, including the American Medical Association, long ago determined that the MUA

---

[1] The Second Amended Complaint, dated October 14, 2010, is abbreviated herein as "Complaint" or "SAC."

[2] Defendants Cigna Corporation and Cigna Healthcare were dismissed pursuant to the Court's August 16, 2010 decision on defendants' motion to dismiss the amended complaint.

procedures are accepted and non-experimental. (SAC ¶¶13, 22, 65, 71, 76)  The Complaint also alleges that in order to discourage future claimants, CG Life has adopted a blanket policy of requiring patients and providers who attempt to obtain these benefits to undergo an arduous appeal process when, in reality, CG Life has preordained that it will deny coverage and the appeal process is therefore futile. (SAC ¶¶79-80)

The Complaint alleges that this conduct violates ERISA and seeks three different remedies: (1) an injunction to prevent CG Life from automatically denying such claims (Count I, SAC ¶¶62-68); (2) a declaratory judgment that CG Life may not deny reimbursement to plaintiffs on the ground that the MUA procedures, as a class, are experimental (Count II, SAC ¶¶69-72); and (3) damages for breach of contract (Count III, SAC ¶¶73-82).  Each of these counts states a claim for relief.

CG Life's Motion is based on a fundamental misapprehension of Plaintiffs' theory.  The thrust of the Motion is the contention that the Complaint challenges only one ground of CG Life's denial of benefits, whereas the denials were based on "multiple independent grounds." CG Life goes on erroneously to argue that Plaintiffs' claims are insufficient because they do not allege that all the grounds on which CG Life purported to deny benefits were improper.  In fact what Plaintiffs allege is that (a) CG Life has a blanket policy of denying all coverage for MUA procedures, (b) that this policy entails denying such claims automatically with no medical review and then providing *purely pretextual grounds* for the dismissals after the fact, and (c) that this improper blanket policy is reflected in the representative cases set forth in the Complaint.  Even to the extent CG Life suggests that it did perform evaluations of medical necessity in the cases at issue, Plaintiffs contest that contention.  As such, CG Life's main argument at most raises an

2

issue of fact that cannot be appropriately determined at this stage of the litigation.

## **The Second Amended Complaint**

Plaintiffs are duly-licensed health care providers who have not entered into a contract with CG Life to be part of its provider networks.  As non-participating ("Nonpar") providers, Plaintiffs were free to provide generally accepted chiropractic and other medical services and were entitled to charge their usual and customary rates for such services.  Moreover, CG Life is required to pay benefits to Plaintiffs, or their patients, pursuant to the terms and conditions of CG Life's Plans and/or plans administered by CG Life.  Once a service is provided, the Insureds who were treated by Plaintiffs are indebted to them for the full amount of the Nonpar providers' services as billed. (SAC ¶3)

Manipulation Under Anesthesia is a manual therapy treatment system which is used to improve articular and soft tissue movement using specifically-controlled release, myofascial manipulation, and mobilization techniques with an anesthesiologist while the patient is under moderate to deep sedation using monitorized anesthesia care.  For joints that lack a complete range of motion, MUA is employed by specially-trained chiropractors and orthopedic surgeons together with an anesthesiologist as a means of breaking up scar tissue around the joint. (SAC ¶21)

For more than 30 years, MUA procedures have been listed as a Category I CPT code in the Codebook of Reimbursable Procedures published by the American Medical Association ("AMA").  The AMA has stated that this procedure is "consistent with contemporary medical practice" and "does not represent experimental or emerging technology."  The applicable MUA protocols, set forth by the National Academy of Manipulation Under Anesthesia Physicians, hold

3

(*inter alia*) that MUA is an appropriate treatment for pain. (SAC ¶22)

Despite the fact that MUA procedures are not experimental, CG Life's policy is to deny requests for reimbursement "across the board" for such procedures. (SAC ¶64)  The Complaint sets forth three representative cases in which CG Life denied reimbursement to a Plaintiff, as an assignee of the respective patient's rights, for MUA services rendered to a patient covered by a CG Life-administered health care plan. (SAC ¶¶26-61)  The Complaint identifies the plan at issue in each case. (SAC ¶¶23-24) and quotes the plan provisions under which Plaintiffs claim benefits. (SAC ¶25)  In every one of the representative cases, a Plaintiff was obliged to pursue a multi-level appeals procedure, and informed at each step of the process that CG Life was denying the claim on the ground that MUA procedures were "experimental." (SAC ¶¶26-61)

## LEGAL ARGUMENT

## THE MOTION TO DISMISS THE ERISA CLAIMS SHOULD BE DENIED

### I.   The Standard Applicable to a Motion to Dismiss

The Third Circuit has recently summarized the standard on a Rule 12(b)(6) motion to dismiss as follows:

> Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court held that to satisfy Rule 8, a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible. *Id*. at 556, 569 n. 14; *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir.2010); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  In determining whether a complaint is sufficient, courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible-as opposed to merely conceivable-claim for relief. *Ashcroft v. Iqbal*, ---U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009).

*West Penn Allegheny Health System, Inc. v. UPMC*,  __ F.3d ____, 2010 WL 4840093, at *7 (3d Cir. Nov. 29, 2010).  *See also Cerome v. Moshannon Valley Corr. Ctr./Cornell Cos., Slip Op.*, 2010 WL 4948940, at *2 (3d Cir. Dec. 7, 2010) ("To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  'In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.'  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir.2009)").

## II.     The Second Amended Complaint States Claims Under ERISA

### A.     The Facts Show that CG Life Has Acted in Violation of ERISA

CG Life argues that the Complaint fails to plead sufficient facts to show that its claims are "plausible" within the dictates of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def. Mem.") at 4). As explained above, while these cases require pleading factual matter to show that that a claim is plausible rather than merely theoretically possible, the Supreme Court has made it clear that Fed. R. Civ. P. 8 "does not require detailed factual allegations" (*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations and quotations omitted)); rather, it requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Complaint does just that.  Under ERISA 502(a)(1)(B):

5

> (a) A civil action may be brought
> > (1) by a participant or beneficiary
> > > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) of ERISA further provides that:

> (a) A civil action may be brought
> > (3) by a participant, beneficiary, or fiduciary
> > > (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> > > (B) to obtain other appropriate equitable relief
> > > > (i) to redress such violations or
> > > > (ii) to enforce any provisions of this subchapter or the terms of the plan

29 U.S.C. § 1132(a)(3).

The Complaint alleges that CG Life is engaged in a "systematic course of improperly denying reimbursements for MUA medical procedures, despite the fact that the procedures are properly prescribed and performed, and are recognized by the American Medical Association … as non-experimental, non-emerging medical procedures" (SAC ¶¶64, 70) and are held to be an appropriate treatment for pain under the applicable MUA protocols. (SAC ¶20) The Complaint further alleges that in order to discourage these claims, CG Life requires health care providers and/or patients to undertake an arduous denial of payment appeals process that is preordained to deny coverage. (SAC ¶¶79-80) The Complaint sets forth three detailed representative cases that support these allegations: the Plaintiffs performed MUA services for patients, received an assignment of benefits from the patient, submitted requests for reimbursement to CG Life, and were all denied on the ground that MUA procedures supposedly were "experimental." (SAC ¶¶26-61) In each case, the Plaintiff followed the multi-stage appeals process dictated by CG Life through to a fruitless end. (*Id.*) Plaintiffs seek damages comprised of the benefits improperly

denied and the unnecessary administrative and legal costs imposed on providers and patients pursuing a preordained result. (SAC ¶¶79-82).  *See*, *e.g., Pennsylvania Chiropractic Assoc. v. Blue Cross Blue Shield Assoc.*, 2010 WL 1979569, at *25 (N.D.Ill. May 17, 2010) (declining to dismiss ERISA claims brought by chiropractic health care providers alleging that insurance companies maintained an improper practice of demanding recoupment, on fraudulent pretexts, of reimbursements paid to the providers.)

The Complaint identifies the three CG Life-administered health plans covering the respective representative cases: the UPS Flexible Benefits Plan (Patient RV), the Steamfitters Welfare fund health insurance plan (Patient AS), and the Deluxe Corporation Plan (Patient ML). (SAC ¶24)  Each of those plans defines "Covered Expenses" as "expenses incurred by or on behalf of a person . . . to the extent that the services or supplies provided are recommended by a physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by CG." (SAC ¶25)  Each plan also specifically enumerates, as Covered Expenses, charges made by a hospital, charges made by a free-standing surgical facility, and charges made by a physician for professional services. (*Id.*)  In addition, pursuant to each plan, a chiropractor is qualified as a "physician," specifically a "chiropractic physician," within the meaning of each plan's terms. (*Id.*)

### B.    Plaintiffs Need Not Demonstrate Medical Necessity In Every Case

Rather than address the central issue in the Complaint – that CG Life routinely and systematically denies coverage for MUA treatment as experimental when it is not – CG Life argues the issue of medical necessity as to each patient. (Def. Mem. at 4-6)  Individualized medical necessity is not the issue here, because regardless of necessity, in each case CG Life

denies coverage based upon a blanket policy of denial.  Furthermore, CG Life never provided a medical review of necessity for the representative cases, and it is long past the time permitted to do so.  *See* 29 CFR Part 2560 (Nov. 10, 2000) at p. 70267 ("the plan administrator shall notify the claimant…of the plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim.")

CG Life argues that the Complaint is deficient in that it alleges that CG Life's denials of reimbursement were arbitrary and capricious to the extent the denials were made on the ground that MUA procedure are "experimental," but not to the extent that the denials were made on any other "independent grounds." (Def. Mem. at 4)   In fact, the theory propounded in the Complaint is not merely that CG Life's reliance on the ground that MUA is "experimental" in denying coverage is arbitrary and capricious, but that (a) CG Life applies a blanket policy of denying all MUA reimbursements, (b) that policy is arbitrarily and capricious, and therefore (c) denials of reimbursement pursuant to that policy are arbitrary and capricious.  Because CG Life's blanket policy of denial was determinative in every MUA case, and foreclosed further analysis, there simply were no other "independent grounds" for CG Life's coverage decisions.  CG Life attempted to justify its systematic denials with the indefensible contention that MUA procedures are *per se* experimental – a contention utterly belied by the applicable medical authorities, as alleged in the Complaint.

CG Life implicitly argues that the Complaint does not satisfy the *Twombly* standard because Plaintiffs have not alleged that MUAs are safe and effective procedures.  CG Life is wrong.  The Complaint plainly alleges the MUA procedures are well-recognized and properly performed (*i.e.,* safe and effective) and that by virtue of its Category 1 CPT Code, the AMA has

found, *inter alia,* that (i) MUA is approved by the FDA for the specific use, (ii) MUA is a distinct service performed by many physicians/practitioners across the United States, and (iii) the clinical efficacy of MUA is well-established and documented in the peer review literature in the United States. (SAC ¶¶21-22)  In arguing that CG Life's denials are not medically necessary, all CG Life has done here is raise fact issues which are not capable of being resolved on this motion. *See*, *e.g.*, *Nightingale & Assocs., LLC v. Hopkins*, Civ. Docket No. 07-4239, 2008 WL 4848765, at *9 (D.N.J. Nov. 5, 2008); *In re Majesco Sec. Lit.*, No. Civ. A 05 CV-3557, 2006 WL 2846281, at *5 (D.N.J. Sept. 29, 2006) (questions of fact cannot be decided on a motion to dismiss).  The Complaint therefore plainly states claims for relief under ERISA, with respect to the applicable ERISA health plans.

The holding of *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523 (D.N.J. 2008), is instructive here.  In *DeVito*, Judge Hochberg refused to dismiss a complaint alleging that the insurance company had a policy of refusing to pay for treatments for eating disorders, allegations that are extremely similar to those here.  As Judge Hochberg explained her ruling:

> Although Defendants argue that '[n]either the Mental Health Parity Law nor the SEHB plans allow Aetna to presume all treatment for BBMI or non-BBMI is 'medically necessary,' this is immaterial to the present motion. Plaintiffs do not allege that Defendants are required to find all treatment for eating disorders 'medically necessary.'  Rather, Plaintiffs allege that Defendants' denial of claims on grounds that the treatment was 'not medically necessary' was pretextual.  Plaintiffs allege that Defendants have improperly denied some claims as 'not medically necessary' because of Defendants' policy of denying all such claims in violation of the terms of Plaintiffs' contracts.  Whether Plaintiffs' pretext allegations are true or false is an issue that will be determined when the case reaches the merits stage.

536 F. Supp. 2d at 532 n.7.  Judge Hochberg also found sufficient plaintiffs' allegations that the appeal process was an exercise in futility, at least for the purposes of a Rule 12(b)(6) motion.  *Id*

9

at 532. Plaintiffs urge the Court to adopt the *DeVito* reasoning in this case.

The three representative cases detailed in the Complaint illustrate that CG Life rejects MUA claims as a matter of routine, pursuant to an improper blanket policy, rather than as a result of any individualized assessment of medical necessity. Patient RV received MUA treatments for pain in the spine, hips, and shoulders. (SAC ¶26) CG Life initially denied reimbursement, stating that the MUA procedures were experimental, investigational, and/or not medically necessary. (SAC ¶30) Patient RV's medical records were then submitted to CG Life with a first-level appeal of the denial, along with a twelve-page letter from the provider detailing the case and explaining why the procedures were medically necessary. (SAC ¶33-34) CG Life denied the appeal, stating:

> the use of either 1) multiple body joint manipulations under anesthesia or 2) manipulation under anesthesia involving any of the following joints or combinations of joints for the management of acute or chronic pain conditions: ankle, cervical, thoracic or lumbar spine, elbow, finger, hip, pelvis, sacroiliac, temporomandibular, thumb, wrist, is considered to be experimental/ investigational/unproven. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of any of these manipulation treatments for acute or chronic pain. The requested service is therefore excluded from coverage under your medical benefit plan as experimental/investigational/unproven.

(SAC ¶36) This makes clear that CG Life was not grounding its denial on any individualized analysis of Patient RV's case for medical necessity, but rather on a blanket policy of denying MUA claims for pain.

Patient AS received MUA treatments for back pain. (SAC ¶40) CG Life responded to the subsequent reimbursement claim with a request for "certain information [required] to review the claim for medical necessity." (SAC ¶43) After the provider sent along the requested information, CG Life denied reimbursement with the same language quoted above with respect

10

to Patient RV. (SAC ¶44)  The provider then appealed, sending to CG Life voluminous information documenting the acceptance of MUA in the medical community, as well as a letter explaining why MUA was medically necessary in the specific case of Patient AS. (SAC ¶47) CG Life affirmed its denial of reimbursement on the grounds that MUA procedures are "experimental/investigational/unproven," once again using the same language as is quoted above with respect to Patient RV. (SAC ¶48)

Patient ML received MUA treatments for various shoulder, back, and pelvic injuries. (SAC ¶50)  CG Life allowed a small portion of the claimed reimbursement (for pelvic manipulation) but denied the claims for shoulder and spine manipulation on the grounds that the treatments were "Experimental and/or investigational services not covered under your plan." (SAC ¶54)  The provider took a first-level appeal, submitting information concerning the acceptance of MUA in the medical community, as well as detailed documentation of the medical necessity of MUA procedures in Patient ML's individual case. (SAC ¶55)  CG Life denied the appeal on the grounds that MUA procedures are "experimental/investigational/unproven," once again using the familiar language quoted above with respect to Patient RV. (SAC ¶56)  Patient ML's second-level appeal was similarly rejected on the grounds that the MUA procedures are "considered to be experimental, investigational, and unproven." (SAC ¶58)

The representative cases establish a clear pattern.  CG Life denies MUA reimbursement claims on the grounds that MUA is "experimental/investigational/unproven," then requests detailed medical documentation in the appeals process, then ultimately rejects the appeals on the same grounds as its initial denial.  There is no indication that such details as the degree of pain or injury suffered by the patient, the efficacy of the MUA treatments, the availability or

11

unavailability of alternative treatments, or the patient's medical history have any bearing on the claims process. CG Life's own denial letters make clear that, despite the due efforts of providers to supply detailed information to assist in an analysis of medical necessity, CG Life's MUA coverage decisions entail no individualized analysis whatsoever.

In light of the foregoing, CG Life's reliance on *Taylor v. Union Security Ins. Co.*, 332 Fed. Appx. 759 (3d Cir. 2009) (Def. Mem. at 4), is misplaced. *Taylor* states that, in determining whether a plan administrator's decision was arbitrary and capricious, courts "must determine whether there was a reasonable basis for the administrator's decision, based on the facts known by the administrator at the time the decision was made." 332 Fed. Appx. at 762-63. Plaintiffs here allege that CG Life made every coverage decision at issue solely pursuant to an unreasonable policy of blanket denial as "experimental"– a theory of the case that passes muster under *Taylor*.[3]

As shown, the Complaint plainly states a claim for relief under Section 502(a)(1)(B) and 502(a)(3).

## III.   Plaintiffs Have Pled a Valid Claim for Injunctive Relief

Count I of the Complaint seeks an order, pursuant to ERISA §§ 502(a)(3)(A) and 502(a)(1)(B), permanently enjoining CG Life from arbitrarily and capriciously denying reimbursement for MUA medical procedures. (SAC ¶68)  CG Life argues that Plaintiffs' claim for an injunction is precluded by their claim for monetary damages for failure to reimburse. (Def. Mem. at 6-8)  While at some point Plaintiffs may have to choose between damages and equitable

---

[3] *Taylor* involved an insurer that denied coverage based on its insured's failure to provide sufficient evidence of disability under a long-term disability plan.  The court agreed that the evidence provided by the insured was inadequate and held for the insurer.  Factually, *Taylor* has little application to the instant litigation, where there is no issue of the sufficiency of documentation provided to CG Life.

12

relief, this is not the time. At the motion to dismiss stage, injunction claims and reimbursement claims can be pursued simultaneously. *See DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008) ("Several cases in this circuit have concluded that claims under § 1132(a)(3) are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under § 1132(a)(1)(B)."); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. Civ.A. 03-CV-1410, 2004 WL 1084658, at *4 (E.D.Pa. Feb. 27, 2004) ("It is too early in these proceedings to decide whether Plaintiff is contractually entitled to benefits under the Plan. If Plaintiff is not entitled to benefits under the Plan, Plaintiff might still be entitled to 'other appropriate equitable relief' to remedy any breaches of fiduciary duty by Defendants.")

Until there is a full factual record, Plaintiffs and the Court should not be required to elect the particular remedy that best vindicates the policies of ERISA.

### IV.     Plaintiffs Have Standing to Seek Relief Pertaining to Future Benefits

CG Life's argument that Plaintiffs lack standing to seek relief pertaining to future benefits is based on a misapprehension of Plaintiffs' claims. (Def. Mem. 8-9) Plaintiffs do not contend that the patients who assigned benefits to Plaintiffs are or will be the same persons who will undergo MUA procedures in the future. Patients who are harmed by CG Life's misconduct are a shifting cast; the Plaintiffs, as chiropractic providers, are likely to suffer recurring harm. This is precisely the kind of circumstance that declaratory and injunctive relief was devised to address.

### V.     Plaintiffs Have Dropped Their Breach of Fiduciary Duty Claim

In accordance with the Court's August 16, 2010 ruling, Plaintiffs have not included a breach of fiduciary duty count in the second amended complaint. As CG Life points out (Def.

Mem. at 10), Plaintiffs have included – within the ERISA benefits count – an allegation that CG Life's conduct constitutes a breach of fiduciary duty under ERISA. This allegation is not set forth as a separate claim, nor is it intended to constitute one. Rather, the fiduciary duty allegation is included only for the purpose of buttressing the benefits claim, to the extent it may do so. The inclusion of this allegation runs counter to neither the Court's Order (which requires removal of the claim, not the allegation), nor the case law upon which the Order is based (which disfavors certain fiduciary duty claims as duplicative of certain benefits claims).

## VI.   Jury Trial

ERISA does not explicitly address the right to jury trials in ERISA actions. The Seventh Amendment to the United States Constitution guarantees the right to a trial by jury in lawsuits "at common law" – that is, where the remedy sought is legal rather than equitable in nature. Plaintiffs acknowledge that the weight of the authorities deems ERISA remedies to be equitable and therefore without a right to a jury trial. However, Plaintiffs assert their right to a jury trial for any and all issues so triable in order to preserve that right as this litigation proceeds.

## CONCLUSION

For the foregoing reasons, CG Life's motion should be denied.

December 15, 2010

BRAGAR WEXLER EAGEL & SQUIRE PC

By: */s/ Lawrence P. Eagel*
Lawrence P. Eagel (LE 4505)
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462

eagel@bragarwexler.com

- and -

Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253

*Attorneys for Plaintiffs*