Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253
  -and-
Lawrence P. Eagel (LE 4505)
Jeffrey H. Squire
BRAGAR WEXLER EAGEL & SQUIRE, PC
885 Third Avenue, Suite 3040
New York, NY  10022
Tel: (212) 308-5858
Fax: (212) 486-0462

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROSPECT MEDICAL, P.C., PREMIER HEALTH CENTER, P.C., SHORE SPINE CENTER & PHYSICAL REHABILITATION, P.C. D/B/A NORTHEAST SPINE AND SPORTS MEDICINE, and NORTHEASTERN SPINAL HEALTH & REHABILITATION, LLC, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, AND CIGNA HEALTHCARE,<br><br>Defendants. | 09 Civ. 5912 (SRC)<br><br>**THIRD AMENDED**<br>**CLASS ACTION COMPLAINT** |

Plaintiffs Shore Spine Center & Physical Rehabilitation, P.C. d/b/a NorthEast Spine and Sports Medicine, and Northeastern Spinal Health & Rehabilitation, LLC, by their undersigned counsel, allege, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action against Connecticut General Life Insurance Company ("CG Life") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for damages arising from CG Life's improper denials of reimbursement of patient charges for manipulation under anesthesia ("MUA") procedures, on the predetermined, pretextual, and inaccurate grounds that MUA procedures are "experimental/investigational/ unproven" (which CG Life equates – with no further analysis – with a determination that the procedures are "not medically necessary.")

2. Plaintiffs are licensed health care providers who seek to represent a class of similarly situated persons described below who were affected by CG Life's conduct as alleged herein (the "Class"). Plaintiffs allege systematic and repeated improper conduct by CG Life in denying patient reimbursement as described more fully herein.

3. Plaintiffs are – and, during the Class Period, as defined below, were – duly licensed health care providers who have not entered into a contract with CG Life to be part of its provider networks. As non-participating ("Nonpar") providers, Plaintiffs were free to provide generally accepted medical and chiropractic services and were entitled to charge their usual and customary rates for such services. Moreover, CG Life is required to pay benefits to Plaintiffs, or their patients, pursuant to the terms and condition of CG Life's Plans and/or plans administered by CG Life. Once a service is provided, the Insureds who were treated by Plaintiffs are indebted to them for the full amount of the NonPar Providers' services as billed.

## THE PLAINTIFFS

4. Plaintiff Shore Spine Center & Physical Rehabilitation, P.C. d/b/a NorthEast Spine and Sports Medicine ("NorthEast") is a professional corporation organized under the laws

2

of the State of New Jersey, with its principal place of business located at 2080 West County Line Road, Jackson, New Jersey, 08527.

5. Plaintiff Northeastern Spinal Health & Rehabilitation, LLC ("Northeastern") is a limited liability corporation organized under the laws of the State of New Jersey with its principal place of business located at 205 Browertown Road, Suite 002, West Paterson, New Jersey, 07424.

6. Plaintiffs have standing to bring ERISA claims as assignees of the rights of their patients, as detailed below.

## THE DEFENDANT

7. Defendant Connecticut General Life Insurance Company ("CG Life") is a corporation organized under the laws of the state of Connecticut, with its headquarters located at 900 Cottage Grove Road, Bloomfield, CT, 06002. CG Life offers, underwrites, and administers commercial health plans ("Plan" or "Plans"), through which health care expenses incurred by Plan insureds for services and/or products covered by the Plans are reimbursed by and/or through CG Life, subject to the Plan's terms, conditions, and limitations. CG Life is the major insurance subsidiary of Cigna Corporation, one of the largest investor-owned health services organizations in the United States.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000 and there is diversity of citizenship between Plaintiffs and Defendant. This Court also has subject matter jurisdiction over this matter pursuant to ERISA § 502, 28 U.S.C.

§ 1332, and pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 18 U.S.C. § 1965 because Defendant, *inter alia*, conduct business within this judicial district, and/or 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. Venue is also proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the judicial district where the breaches described herein took place.

## CLASS ACTION ALLEGATIONS

10. Plaintiffs bring this action on their own behalf and behalf of a Class defined as follows:

> All Nonpar health care providers who, from the beginning of the longest appropriate statute of limitations through the present (the "Class Period"), provided MUA medical services for which CG Life declined payment of the provider's billed charge, or for which CG Life required the provider to appeal CG Life's nonpayment of benefits, on the grounds that the procedures are experimental/investigational/unproven (or substantially equivalent grounds) and thus not covered/not medically necessary.

11. CG Life's denial of MUA treatment on the grounds that the treatment is experimental/investigational/unproven is an arbitrary and capricious act, in contravention of established medical and scientific literature, as well as the opinion of the American Medical Association.

12. 29 USC 1133 and 29 CFR 2560.503 1 (g) require specificity in the denial of benefits in a health insurance plan within 30 days of receipt of a claim. CG Life has denied these services as experimental/investigational/unproven regardless of, and/or without a review of, the patient's medical records for the medical indications for MUA treatment. CG Life has predetermined wrongly that this treatment is experimental/investigational/unproven and thus not

4

covered regardless of the indications or specifics of any patient.  Further, in every policy of insurance issued or administered by CG Life, medically necessary medical and chiropractic treatment which is not experimental/investigational/unproven is a covered benefit.

13.     The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of thousands of health care providers throughout the United States.  The precise number of Class members is within CG Life's custody and control.  Based on reasonable estimates, the numerosity requirement is easily satisfied for the Class.

14.     Common questions of law and fact exist as to all class members and predominate over any questions affecting solely individual members of the Class.  Such common questions include: (a) whether MUA procedures are "experimental/investigational/unproven"; (b) whether CG Life wrongfully denies reimbursement for MUA procedures as "experimental/investigational/unproven"; (c) whether CG Life discourages MUA procedures and reimbursement claims for such procedures by requiring an arduous appeals process; and (d) whether ERISA applies to such claims.

15.     The named Plaintiffs' claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, CG Life breached its contractual obligations to the named Plaintiffs and the Class through and by uniform patterns or practices described herein.

16.     The named Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation, and have no interests antagonistic to or in conflict with those of the Class.  For these reasons, the named Plaintiffs are adequate

class representatives.

17.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for CG Life.

18.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the class is impracticable. Further, because the damages due to individual class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them.

## FACTS

**A.    MANIPULATION UNDER ANESTHESIA**

19.     Manipulation Under Anesthesia ("MUA") is a manual therapy treatment system which is used to improve articular and soft tissue movement using specifically-controlled release, myofascial manipulation, and mobilization techniques with an anesthesiologist while the patient is under moderate to deep sedation using monitorized anesthesia care.  MUA is employed by specially-trained chiropractors and other trained physicians together with an anesthesiologist as a means of breaking up scar tissue around a joint without complete range of motion.

20.     For more than 30 years, MUA procedures have been listed as a Category I CPT code in the Codebook of Reimbursable Procedures published by the American Medical Association ("AMA").  The AMA has stated that this procedure is "consistent with contemporary medical practice" and "does not represent experimental or emerging technology." The applicable MUA protocols, set forth by the National Academy of Manipulation Under

Anesthesia Physicians, hold (*inter alia*) that MUA is an appropriate treatment for pain.

**B.        REPRESENTATIVE PLANS**

21.    In each of the representative cases, the patients were members of self-insured plans being administered by CG Life.

22.    Patient AS was a member of the Steamfitters Welfare fund's health insurance plan during the treatment period herein. Patient ML was a member of the Deluxe Corporation Plan during the treatment period herein.

23.    Pursuant to each plan's terms, Covered Expenses are "expenses incurred by or on behalf of a person . . . to the extent that the services or supplies provided are recommended by a physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by CG."  Specifically enumerated are charges made by a Hospital, charges made by a Free-Standing Surgical Facility, and charges made by a physician for professional services. In addition, pursuant to each plan, a chiropractor is qualifies as a "physician", specifically a "chiropractic physician", within the meaning of each plan's terms.

**C.        REPRESENTATIVE CASES**

**Patient AS**

24.    Patient AS received treatment from Dimitrios Lambrou, DC, of Plaintiff NorthEast on December 11, 12, and 15, 2008, for chronic back pain.  The treatment consisted of spinal manipulation under anesthesia (CPT 22505), pelvic ring manipulation under anesthesia (CPT 27194), hip joint manipulation under anesthesia (CPT 27275), and shoulder joint manipulation under anesthesia (CPT 23700).

25.    Patient AS was a participant in an "Open Access Plus" health plan administered

by and/or subject to the discretion of CG Life, with Account Number 3329694 and Participant ID Number U3204078401.

26.     As is the usual procedure with health care providers, Patient AS signed an assignment of insurance benefits to NorthEast, dated November 13, 2008.

27.     On or about December 18, 2008, in response to NorthEast's submission of a claim for reimbursement for the procedures performed on Patent AS, CG Life sent NorthEast a Provider Explanation of Benefits Report that indicated that, for each of the MUA procedures, "certain additional information from the provider is necessary to review the claim for medical necessity."

28.     On or about January 21, 2009, after NorthEast submitted to CG Life the additional information its had requested, CG Life notified NorthEast that CG Life was denying reimbursement for the MUA procedures administered to Patient AS, stating, in pertinent part:

> After review of the information submitted by your provider and the terms of your benefit plan, we have determined the requested service(s) are not covered. This decision was based on the following:
>
> The use of either 1) multiple body joint manipulations under anesthesia or 2) manipulation under anesthesia involving any of the following joints or combinations of joints for the management of acute or chronic pain conditions: ankle, cervical, thoracic or lumbar spine, elbow, finger, hip, pelvis, sacroillac, temporomandibular, thumb, wrist, is considered to be experimental/ investigational/unproven. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of any of these manipulation treatments for acute or chronic pain. The requested service is therefore excluded from coverage under your medical benefit plan as experimental/investigational/unproven.

(CPT codes omitted.) The letter further states, "It appears that the pre-certification for the CPT 27194 x 3 was obtained with inaccurate information and should be denied." The letter contains no individualized analysis of the patient's medical condition or need for treatment; rather, the

8

denial of reimbursement is plainly grounded solely on a blanket policy of denial for "any of these manipulation treatments for acute or chronic pain."

29. On or about March 23, 2009, N&D Consulting contacted CG Life on behalf of Patient AS to appeal CG Life's non-payment and request reimbursement of the charges.

30. On or about June 30, 2009, N&D Consulting contacted CG Life to make a second-level appeal of CG Life's non-payment decision regarding the procedures administered to Patient AS.

31. Both appeals included numerous articles documenting the effectiveness, acceptance, and wide range use of manipulation under anesthesia, including articles, case law, as well as the medical records and letter of medical necessity from Dr. Lambrou.

32. On or about July 28, 2009, CG Life notified Patient AS that the second-level appeal of CG Life's non-payment decision had been denied. CG Life notified Patient AS that a portion of the services, procedure code 27194, has been re-approved and sent for processing. The letter upholds the denial on the balance of the treatment on the grounds that:

> From the documentation presented and appeal information provided, medical necessity has not been established as none of the above criteria [sic: no "above criteria" are given] have been met. The use of either multiple body joint manipulations under anesthesia or manipulation under anesthesia involving any of the following joints or combinations of joints for the management of acute or chronic pain conditions- ankle; cervical, thoracic or lumbar spine; elbow; finger; hip; pelvis; sacroiliac; temporormandibular; thumb; and wrist is considered to be experimental/investigational/unproven. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of any of these manipulation treatments for acute or chronic pain. The requested service is therefore excluded from coverage under your medical benefit plan as experimental/investigational/unproven.

In addition, the letter states:

> According to your summary Plan Description provided by Steamfitters Local 475,

9

> under the section titled "Exclusions, Expenses Not Covered and General Limitations", additional coverage limitations determined by the plan or provider type are shown in the Schedule. Payment for the following is specifically excluded from this plan: for or in connection with experimental, investigational or unproven services.

This letter contains no individualized analysis of the patient's medical condition or need for treatment, yet concludes that "medical necessity has not been established." As with the previous denial letter of January 21, 2009, CG Life's own language makes clear that its determination here is grounded solely on a blanket policy of denial of reimbursement for MUA procedures for pain.

33. The letter advises that the final step of the internal administrative review process is complete and that there may be the right to bring an action under ERISA. As such Plaintiff AS has exhausted the available administrative remedies.

**Patient ML**

34. Patient ML received treatment from Michael R. Czupak, DC, of Plaintiff Northeastern on October 23, 24, and 25, 2008, for lumbar radiculitis, lumbar disc disease, pelvic pain, hip derangement, cervical disc herniation, lumbar disc herniation, thoracic spine pain, and shoulder pain. The treatment on each of the three days consisted of spinal manipulation under anesthesia (CPT 22505), hip joint manipulation under anesthesia (CPT 27275), and shoulder joint manipulation under anesthesia (CPT 23700).

35. Patient ML was a participant in a group health plan administered by and/or subject to the discretion of CG Life, with Participant ID Number U01866651-01.

36. As is the usual procedure with health care providers, Patient ML signed an assignment of insurance benefits to Northeastern.

37. On or about October 31, 2008, Northeastern submitted to CG Life claim forms requesting payment for the procedures performed on Patient ML, totaling $28,200.

38. On or about December 13, 2008, CG Life responded with a Provider Explanation of Medical Payment Report that indicated CG Life would pay only $1,331.25 of the $28,200 requested in the claim forms. The amount paid was allotted to payment for manipulation of the pelvis, and payment for manipulation of the spine and shoulder was denied on the grounds that "Experimental and/or investigational services are not covered under your plan. Of the $26,868.75 in claims denied by CG Life, $22,868.75 of that amount was denied for the stated reason that the procedures were "experimental and/or investigational."

39. By letter dated January 20, 2009, Northeastern appealed CG Life's nonpayment, noting, inter alia, that the procedures at issue were listed as established procedures in the AMA CPT codebook of reimbursable procedures, and as such did not represent experimental or emerging technologies. In addition, all medical documentation supplying the medical rationale for the procedures was attached to the appeal. The medical reports documented that, "Upon review of the patient's history and supplied medical records, a plateau has been reached reflecting minimal further improvement with past treatment attempts. Upon examination, less than optimum range of motion is present with significant end range pain and myofascial tenderness to palpation and/or including radicular pain and/or parasthesis." The treating doctor opined that manipulation under anesthesia of the spine and shoulder was medically necessary.

40. By letter dated January 28, 2009, CG Life denied the first-level appeal of non-payment, on the stated grounds that:

> After reviewing the submitted records and our Utilization Management (UM) criteria for Manipulation Under Anesthesia, I have concluded that the information

11

>  provided does not establish the medical necessity for these procedures. The use of either 1) multiple body joint manipulations under anesthesia or 2) manipulation under anesthesia involving any of the following joints or combinations of joints for the management of acute or chronic pain conditions: ankle, cervical, thoracic or lumbar spine, elbow, finger, hip, pelvis, sacroillac, temporomandibular, thumb, wrist, is considered to be experimental/investigational/unproven. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of any of these manipulation treatments for acute or chronic pain. The requested service is therefore excluded from coverage under your medical benefit plan as experimental/investigational/unproven.

(CPT codes omitted). The letter continues:

>  Under the Deluxe Corporation Summary Plan Description, under the section titled Noncovered General Medical Services, it states "expenses for or in connection with experimental procedures or treatment methods not approved by the American Medical Association or the appropriate medical specialty society are a noncovered benefit."

This letter contains no individualized analysis of the patient's medical condition or need for treatment, yet concludes that "the information provided does not establish the medical necessity for these procedures." CG Life's own language makes clear that its determination here is grounded solely on a blanket policy of denial of reimbursement for MUA procedures for pain.

  41. On or about February 4, 2009, CG Life was sent a second-level appeal of its non-payment determination concerning Patient ML's MUA procedures.

  42. By letter dated March 5, 2009, CG Life denied the second-level appeal, stating:

>  The committee reviewed all the submitted information. The use of either 1) multiple body joint manipulations under anesthesia or 2) manipulation under anesthesia involving any of the following joints or combinations of joints for the management of acute or chronic pain conditions: ankle, cervical, thoracic or lumbar spine, elbow, finger, hip, pelvis, sacroillac, temporomandibular, thumb, wrist, is considered to be experimental/investigational/unproven. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of any of these manipulation treatments for acute or chronic pain. The requested service is therefore excluded from coverage under your medical benefit plan as

      experimental/investigational/unproven.  This decision was based on the submitted information and our Coverage Position on Spinal Manipulation Under Anesthesia.

Despite the fact that this is purported to be a second-level appeal, this letter evinces no individualized analysis of the patient's case.  In fact, CG Life merely sets forth, verbatim, the same boilerplate denial language used in its previous denial letter of January 28, 2009.  Once again, CG Life's own language makes clear that its determination here is grounded solely on a blanket policy of denial of reimbursement for MUA procedures for pain

      43.    By letter dated July 29, 2009, N&D Consulting, Inc. appealed CG Life's partial and non-payment of Patient ML's claims, noting that the services were "deemed medically necessary," and attaching all of the supporting medical documentation.

      44.    In response, CG Life notified Patient ML, by letter dated October 1, 2009, that CG Life would not pay the charges and that CG Life "will not perform any further review of this matter as the internal appeals process had been exhausted."

      45.    As such Plaintiff ML has exhausted the available administrative remedies.

**CLAIM FOR RELIEF**

**COUNT I**

**CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B)**

      46.    Plaintiffs repeat and reallege the allegations of paragraphs 1-45 as if fully set forth herein.

      47.    By virtue of its various health care plans and policies, CG Life has an obligation to reimburse patients and/or providers for covered medical procedures when properly performed.

      48.    CG Life's systematic denial of reimbursement requests for MUA procedures on the predetermined, pretextual, and inaccurate grounds that such procedures are "experimental/

investigational/unproven" (and are, for that reason alone, "not medically necessary") is arbitrary and capricious, and constitutes a breach of its obligations under the various health care plans and policies issued and/or administered by CG Life, and a violation of ERISA § 502(a)(1)(B).

49.     CG Life's systematic breach of its obligations has caused, and continues to cause, damage to Plaintiffs and to the Class.

50.     In particular, CG Life's requirement that health care providers and/or patients undertake an arduous denial of payment appeals process imposes unnecessary administrative and legal costs on providers.

51.     In addition, the requirement of an arduous denial of payment appeals process effectively denies reimbursement to entitled providers and/or patients who may be unwilling or unable to undertake the cost and effort of the appeals process.

52.     By reason of CG Life's systematic breaches of its obligations and violations of ERISA described herein, Plaintiffs and the Class have been damaged in an amount to be determined at trial but believed to be in excess of $5 million.

53.     CG Life's breach of its contractual obligations to patients and beneficiaries described herein constitutes a violation of ERISA amenable to redress pursuant to ERISA § 502(a)(1)(B), and Plaintiffs and the Class accordingly seek damages against CG Life in an amount to be determined at trial but believed to be in excess of $5 million.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and the Class as follows:

(a) certifying a class consisting of all Nonpar health care providers who provided MUA medical services for which CG Life declined payment of the provider's billed charge as "experimental/investigational/unproven" or substantially equivalent grounds;

(b) against CG Life on the First Count for compensatory damages in an amount to be determined at trial but believed to be in excess of $5 million, together with pre-judgment interest, as well as costs, disbursements and attorney fees incurred herein;

(c) granting such other and further relief as the Court may deem just and proper.

Dated: February 24, 2011

  /s/ Lawrence P. Eagel_____
Lawrence P. Eagel (LE 4505)
BRAGAR WEXLER EAGEL & SQUIRE PC
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bragarwexler.com

-and-

  /s/ Julie Lefkowitz_____
Julie Lefkowitz
LAW OFFICES OF JULIE LEFKOWITZ, LLC
One University Plaza, Suite 412
Hackensack, NJ  07601
Tel: (201) 467-5700
Fax: (201) 731-5253

*Attorneys for Plaintiffs*