# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PROSPECT MEDICAL, P.C., PREMIER
HEALTH CENTER, P.C., SHORE SPINE
CENTER & PHYSICAL REHABILITATION,
P.C. D/B/A NORTHEAST SPINE AND
SPORTS MEDICINE, and NORTHEASTERN
SPINAL HEALTH & REHABILITATION,
LLC, on behalf of themselves and others
similarly situated,

       Plaintiffs,

vs.

CIGNA CORPORATION, CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,
AND CIGNA HEALTHCARE,

       Defendants.

*Document Electronically Filed*

Civil Action No.: 09-5912 (SRC) (CLW)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
THE THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(C)**

---

Brian J. McMahon
E. Evans Wohlforth, Jr.
Timothy J. Duva
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879
bmcmahon@gibbonslaw.com
ewohlforth@gibbonslaw.com
tduva@gibbonslaw.com

*Attorneys for Defendant
Connecticut General Life Insurance Company*

*On the brief:*  E. Evans Wohlforth, Jr.
             Timothy J. Duva

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...................................................................................................................2

    I.     The District Court Proceedings in the UnitedHealthGroup Matter ......................2

    II.    The Third Circuit's Affirmance of Judge Cavanaugh's Rulings ...........................4

ARGUMENT...........................................................................................................................6

    I.     The Standard Applicable on a Motion for Judgment on the Pleadings
         Pursuant to Federal Rule of Civil Procedure 12(c).................................................6

    II.    Plaintiff Shore Spine's Claims Must Be Dismissed Under the Doctrine of
         Collateral Estoppel...................................................................................................7

        a.     First Factor - The issues to be precluded are identical to the issues
             decided in the previous proceeding ...........................................................9

            i.     Shore Spine's Allegations of the Non-EIU Nature of MUA........10

            ii.    Shore Spine's Allegations Regarding the Medical Necessity
                 of the Procedures At Issue ...........................................................11

            iii.   Shore Spine's allegations regarding a blanket policy for
                 MUA denials...................................................................................13

            iv.   The minor differences in the UnitedHealthGroup and
                 Prospect Medical pleadings do not preclude application of
                 the collateral estoppel doctrine ...................................................13

        b.    Second Factor - The issues to be precluded were actually litigated
             in the UnitedHealthGroup matter ..............................................................14

        c.     Third Factor - The District Court issued a final judgment on the
             merits of the UnitedHealthGroup matter ..................................................14

        d.    Fourth Factor - Determination of the issues to be precluded were
             essential to the judgment in the UnitedHealthGroup matter ...................15

        e.     Fifth Factor - Shore Spine was a party in the UnitedHealthGroup
             matter ..........................................................................................................15

        f.     Shore Spine's claims are subject to collateral estoppel............................15

    III.   Plaintiffs' Claims Fail On the Same Grounds Enumerated by the Third
         Circuit in UnitedHealthGroup ..............................................................................16

        a.    Plaintiffs Failed to Adequately Plead the Medical Necessity of the
             Procedures at Issue ...................................................................................17

# TABLE OF CONTENTS
(continued)

**Page**

    b.    Plaintiffs Failed to Adequately Plead That The MUA Procedures At Issue Were Not Experimental................................................................18

    c.    Plaintiffs' allegations regarding CGLIC's blanket policy of denying MUA claims cannot save its conclusory pleading.....................19

CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

Advanced Rehabilitation, LLC et al. v. UnitedHealthGroup, Inc.,
  No. 11-4269, 2012 U.S. App. LEXIS 20050 (3d Cir., Sept. 25, 2012) ............................passim

Albro v. Leonelli-Spina,
  426 F. App'x 122 (3d Cir. 2011) ..............................................................................8

Allah v. Hayman,
  442 F. App'x 632 (3d Cir. 2011) ..............................................................................6

Andela v. Am. Ass'n for Cancer Research,
  389 F. App'x 137 (3d Cir. 2010) ..............................................................................6

Anspach v. City of Philadelphia,
  380 F. App'x 180 (3d Cir. 2010) .......................................................................8, 9, 13

Bayer Chems. Corp. v. Albermarle Corp.,
  171 F. App'x 392 (3d Cir. 2006) ..............................................................................6

Caver v. City of Trenton,
  420 F.3d 243 (3d Cir. 2005) .......................................................................8, 9, 14, 15

Eastman v. AT&T, Inc.,
  43 F. App'x 483 (3d Cir. 2002) ................................................................................9

EEOC v. American Airlines,
  48 F.3d 164 (5th Cir. 1995) ......................................................................................9

Great Western Mining & Mineral Co. v. ADR Options, Inc.,
  No. 09-2907 (FLW), 2012 U.S. Dist. LEXIS 15279 (D.N.J. Feb. 7, 2012) ..............8

Great Western Mining & Mineral Co. v. Fox Rothschild LLP,
  615 F.3d 159 (3d Cir. 2010) ....................................................................................8

Hennessey v. Winslow Township,
  183 N.J. 593 (2005) .................................................................................................8

Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,
  602 F.3d 237 (3d Cir. 2010) ....................................................................................7

Montana v. United States,
  440 U.S. 147 (1979) .................................................................................................7

Studli v. Children & Youth & Families Cent. Reg'l Office,
  346 F. App'x 804 (3d Cir. 2009) ..............................................................................7

Swiatkowski v. Citibank,
  745 F. Supp. 2d 150 (E.D.N.Y. 2010) ......................................................................7

Walzer v. Muriel, Siebert & Co.,
  221 F. App'x 153 (3d Cir. 2007) ..............................................................................7

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6) ................................................................................................6, 7

Fed. R. Civ. P. 12(b)(c) ....................................................................................................1

Fed. R. Civ. P. 12(c) .........................................................................................................6

Defendant Connecticut General Life Insurance Company ("CGLIC") submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(c).  For the reasons set forth below, CGLIC respectfully requests that the Court grant its motion and dismiss Plaintiffs' Third Amended Complaint in its entirety, with prejudice.

## PRELIMINARY STATEMENT

On September 25, 2012, the Third Circuit Court of Appeals issued its decision in Advanced Rehabilitation, LLC et al. v. UnitedHealthGroup, Inc., No. 11-4269, 2012 U.S. App. LEXIS 20050 (3d Cir., Sept. 25, 2012) affirming the dismissal and denial of leave to replead an essentially identical case, brought by the same counsel and involving one of the same Plaintiffs. The case theories, operative facts and, indeed, the relevant portions of the pleadings are functionally identical in both the UnitedHealthGroup matter and this case.  It follows, therefore, that this case too should be dismissed with prejudice.

As to the plaintiff common to both cases, Shore Spine Center & Physical Rehabilitation, P.C. ("Shore Spine"), the Third Circuit's ruling in UnitedHealthGroup operates as a collateral estoppel of Shore Spine's claims here, which must be dismissed with prejudice.  As to the other remaining, named Plaintiff in this case, Northeastern Spinal Health & Rehabilitation, L.L.C., ("Northeastern Spinal") the Third Circuit's decision is strongly persuasive authority demonstrating that the balance of the Plaintiffs' Third Amended Complaint must be dismissed.[1]

---

[1] The other named Plaintiffs, Prospect Medical, P.C., and Premier Health Center, P.C., were dismissed at the Motion to Dismiss stage and never reintroduced into the action.

## BACKGROUND

This matter, commenced in 2009 as a putative class action, has already endured a tortured history. CGLIC is the claims administrator for health benefit plans governed by ERISA. Plaintiffs allegedly performed a chiropractic therapy known as manipulation under anesthesia ("MUA") on patients covered under certain of those plans. Plaintiffs' case relies on their contention that CGLIC acted arbitrarily and capriciously when it determined that MUA was not a covered benefit when used to treat chronic pain, on the grounds that MUA is experimental, investigational or unproven as a treatment for that condition.

CGLIC filed three motions to dismiss based on the insufficiency of Plaintiffs' successive pleadings[2] and Plaintiffs are now on their Third Amended Complaint ("Prospect TAC"). During the proceedings, both the Court and CGLIC have at various times noted the logical difficulties that beset Plaintiffs' theory of the case and the unlikelihood that this matter could ever be certified as a class action. Meanwhile, Plaintiffs' counsel were simultaneously prosecuting an identical putative class action against another ERISA plan administrator, captioned Advanced Rehabilitation, LLC et alia v. UnitedHealthGroup, Inc., Civ. No. 10-00263 (D.N.J.), before the Hon. Dennis M. Cavanaugh. The allegations in that matter are indistinguishable from those at issue here in Prospect Medical. Indeed, one of the plaintiffs before Judge Cavanaugh -- Shore Spine -- is also a Plaintiff in this case.

## I.      The District Court Proceedings in the UnitedHealthGroup Matter

In UnitedHealthGroup, the plaintiffs' First Amended Complaint ("United FAC") alleged, among other things, that the plan administrator defendant wrongfully denied MUA claims as

---

[2] Plaintiffs filed an Amended Complaint in response to CGLIC's first motion, and the Court granted CGLIC's second and third motions while giving Plaintiffs leave to replead.

experimental and "not medically necessary" pursuant to a blanket policy.  See United FAC, a true and correct copy of which is attached to the Certification of E. Evans Wohlforth, Jr., submitted herewith ("Wohlforth Cert.") as **Exhibit A**, at ¶¶ 95-96.

Granting the defendants' motion to dismiss the United FAC, Judge Cavanaugh found that the pleading failed under Twombly, as the plaintiffs neglected to allege that the procedures at issue were either medically necessary or non-experimental for the specific conditions that they were used to treat.  See Judge Cavanaugh's March 17, 2011 Opinion in 10-cv-00263 (D.N.J.), a true and correct copy of which is attached to the Wohlforth Cert. as **Exhibit B**, at p. 6.  Judge Cavanaugh also found that the plaintiffs' dependence on the fact that the American Medical Association had issued a Current Procedural Terminology ("CPT") code for MUA was unavailing, as "the fact that a procedure may be medically necessary and be assigned a CPT code for one condition shows nothing about its necessity or appropriateness for another."  Id. at 6.

With regard to the import of CPT codes, Judge Cavanaugh wrote:

> Plaintiffs must allege something more than the existence of CPT codes to demonstrate that the MUA procedures, as performed on the representative sample of patients, met the conditions for coverage as defined in the governing health plans.  Only if they met these conditions, and Plaintiffs could attest to the medical necessity of performing these procedures on these patients for these afflictions would there be a threshold showing that the Court could credit.

Id. at 6-7.  In short, Judge Cavanaugh made clear that the plaintiffs needed to make an individualized showing of (i) the medical necessity and (ii) the non-experimental nature of each treatment for each patient.  Id.  As the UnitedHealthGroup plaintiffs failed to do so, Judge Cavanaugh dismissed their pleading.

The plaintiffs thereafter moved for leave to file a second amended complaint.  Denying that motion, Judge Cavanaugh found, in pertinent part, that "[t]he amendments offered by

Plaintiffs would not withstand a motion to dismiss and are therefore futile under <u>Forman</u>." <u>See</u> Judge Cavanaugh's October 31, 2011 Opinion in 10-cv-00263, a true and correct copy of which is attached to the Wohlforth Cert. as **Exhibit C**, at 5. Taken together, Judge Cavanaugh's rulings amounted to a dismissal with prejudice. The plaintiffs subsequently appealed Judge Cavanaugh's original order of dismissal, as well as his order denying them the opportunity to replead.

## II.   <u>The Third Circuit's Affirmance of Judge Cavanaugh's Rulings</u>

The Third Circuit made short work of the pleadings before it. The Court of Appeals noted that the plaintiffs were required to plead that the plan administrator abused its discretion in determining whether the MUA procedures at issue were medically necessary or experimental under the specific circumstances of their case. <u>See</u> <u>UnitedHealthGroup</u>, 2012 U.S. App. LEXIS 20050 at *7-8. The panel found that the <u>UnitedHealthGroup</u> complaint failed each of these requirements. "Despite the fact that a 'medical necessity' determination requires an <u>individualized assessment based on the specific needs of a patient</u>, Plaintiffs have alleged no facts to demonstrate that MUA procedures were 'medically necessary' for the particular patients who received them." <u>Id.</u> at *9 (emphasis added). "Similarly, Plaintiffs have failed to allege that MUA procedures were both consistent with national medical standards and considered by medical literature to be safe and effective." <u>Id.</u>

The Third Circuit also rejected the plaintiffs' contention that the pleading contained sufficient medical detail regarding the merits of MUA (<u>i.e.</u>, that the procedure was not "experimental"). The <u>UnitedHealthGroup</u> plaintiffs had cited the American Medical Association's listing of MUA with a Category I CPT code, contending that this "lends weight" to the plausibility of their claims. The Third Circuit disagreed, finding that "a mere CPT code is

not enough to establish a plausible entitlement to relief." Id. at *10.  Moreover, "even if a CPT code from just one organization were enough to suggest that MUA treatment is consistent with national standards, Plaintiffs have not demonstrated that such treatment plausibly would be considered safe and effective for treating the individual patients in this case.  Without such an individualized assessment, the complaint is fatally flawed." Id. (emphasis added).

Lastly, the Court of Appeals rejected the plaintiffs' argument that an alleged blanket policy of denying all MUA claims made individualized assessments unnecessary.  The court wrote that such general allegations "fall well short of plausibly showing that the policy was arbitrary and capricious.  Indeed, if MUA procedures were either 'experimental' or not 'medically necessary' as defined by the representative plans, routinely denying coverage for such procedures would have been consistent with the terms of those plans." Id. at *11-12.

The Third Circuit likewise found that the plaintiffs' proposed amended complaint failed to remedy the defects of their previous pleading.  The Court noted that the new pleading cited a medical journal which found "MUA to be 'safe and efficacious' in certain contexts." Id. at *13. The Court of Appeals characterized the balanced of the proposed pleading, however, as "add[ing] only conclusory allegations." Id.  Because the proposed amended complaint would not, in the Third Circuit's view, have withstood another motion to dismiss, Judge Cavanaugh properly denied leave to amend and the UnitedHealthGroup case was at an end. Id. at *12-13.

As will be explored in detail infra, the relevant portions of the plaintiffs' pleadings in UnitedHealthGroup are identical, or functionally so, to the Prospect TAC.  Indeed, the flaws that the Third Circuit found in the UnitedHealthGroup pleadings are even more pronounced in Plaintiffs' Third Amended Complaint in this matter.

## ARGUMENT

I.    **The Standard Applicable on a Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)**

"The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir. 2011). Under Rule 12(c), therefore, "'judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Andela v. Am. Ass'n for Cancer Research, 389 F. App'x 137, 140 (3d Cir. 2010) (internal citations omitted). As with a 12(b)(6) motion, while the Court "'must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party . . . [it] need not accept as true legal conclusions or unwarranted factual inferences.'" Bayer Chems. Corp. v. Albermarle Corp., 171 F. App'x 392, 397 (3d Cir. 2006) (internal citations omitted).

Parenthetically, the Third Circuit's recent opinion in UnitedHealthGroup confirms what CGLIC has argued from the outset of this matter: Plaintiffs' claims are not suitable for class treatment, as Plaintiffs will need to establish, for each claimant, that the specific treatments rendered were both "medically necessary" and not "experimental/investigational/unproven" under the circumstances. Those requirements make class certification impossible. Putting aside the class issue for the moment, the UnitedHealth Group decision also demonstrates that Plaintiff' claims are insufficient to support their claims regarding treatment rendered to the remaining "Representative Patients," A.S. and M.L.

## II.   Plaintiff Shore Spine's Claims Must Be Dismissed Under the Doctrine of Collateral Estoppel

In affirming Judge Cavanaugh's decisions in UnitedHealthGroup, the Third Circuit finalized the judgment dismissing each of the plaintiffs' claims, including those of Shore Spine, which is also a party here.  Shore Spine's allegations in this matter are functionally identical to those that the Third Circuit found to be insufficient and therefore "fatally flawed" in UnitedHealthGroup.  If anything, the allegations at issue in UnitedHealthGroup were slightly more detailed than those set out in the Prospect TAC.  Shore Spine's claims are therefore barred by operation of the collateral estoppel rule.

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247 (3d Cir. 2010) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)).  Collateral estoppel applies to both factual and legal issues.  Studli v. Children & Youth & Families Cent. Reg'l Office, 346 F. App'x 804, 813 (3d Cir. 2009).  Additionally, parties may assert the doctrine on a motion to dismiss or motion for judgment on the pleadings.  See, e.g., Walzer v. Muriel, Siebert & Co., 221 F. App'x 153, 155 (3d Cir. 2007) ("Although res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) ("A court may dismiss a claim on res judicata or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment.").  More specifically, the doctrine operates to require dismissal of claims that are based on allegations a court has previously adjudged as deficient.  Great Western Mining & Mineral Co. v. ADR Options, Inc., No. 09-2907 (FLW), 2012 U.S. Dist. LEXIS 15279, *31-

32 (D.N.J. Feb. 7, 2012) (finding that a plaintiff was collaterally estopped from raising a claim based on the same allegations that both the District Court and Third Circuit had, in an earlier action, rejected as factually deficient under <u>Twombly</u> in the context of a proposed amended complaint submitted in support of a motion for leave to amend) (citing <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 179 (3d Cir. 2010) ("Great Western's Proposed Amended Complaint 3 lacks sufficient factual allegations to create 'plausible grounds to infer an agreement,' as is required by Twombly.  Any effort to amend by substituting Proposed Amended Complaint 3 therefore was futile, and we in turn affirm the District Court's denial of leave to amend on that ground.") (internal citations omitted)).

The United States Court of Appeals for the Third Circuit has found that the doctrine of collateral estoppel is applicable only where <u>each</u> the following factors are satisfied:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

<u>Caver v. City of Trenton</u>, 420 F.3d 243, 259 (3d Cir. 2005) (quoting <u>Hennessey v. Winslow Township</u>, 183 N.J. 593, 599 (2005)); <u>see also</u> <u>Albro v. Leonelli-Spina</u>, 426 F. App'x 122, 124-125 (3d Cir. 2011).  "Issues litigated in a prior action have preclusive effect if the controlling facts essential to the judgment remain unchanged in the later action."  <u>Anspach v. City of Philadelphia</u>, 380 F. App'x 180, 184 (3d Cir. 2010).

It is not necessary, however, that all aspects of both matters must be identical in order for collateral estoppel to apply.  "'To produce absolution from collateral estoppel on the ground of changed factual circumstances, the changes must be of a character and degree as might place before the court an issue different in some respect from the one decided in the initial case.'"  <u>Id.</u>

(quoting EEOC v. American Airlines, 48 F.3d 164, 168 (5th Cir. 1995)).  As such, minor factual differences will not save a matter from the dispositive effect of collateral estoppel.  See, e.g., Anspach, 380 F. App'x at 185 (claims barred under collateral estoppel doctrine where "new" information did not significantly chance the controlling facts); Eastman v. AT&T, Inc., 43 F. App'x 483, 484-485 (3d Cir. 2002) (affirming dismissal on collateral estoppel grounds where substance of second complaint was functionally identical to a previously dismissed pleading, despite fact that plaintiffs attempted to frame their cause of action differently).

Here, the final judgment dismissing Shore Spine's nearly identical claims in the UnitedHealthGroup matter satisfies each of the factors that the Third Circuit enumerated in Caver.  CGLIC will address each factor in turn.

### a.   First Factor - The issues to be precluded are identical to the issues decided in the previous proceeding

The first and most complex of the Caver factors examines whether the issue to be precluded is the same as an issue decided in a previous case.  See 420 F.3d at 249.  Here, the operative, identical issue is whether Shore Spine has sufficiently alleged that a plan administrator acted arbitrarily and capriciously in denying Shore Spine's MUA claims as "not medically necessary" and/or "experimental/investigational/unproven ("EIU")."  This point encompasses three distinct sub-issues:  i) did Shore Spine adequately plead that the procedures at issue were "medically necessary?"; ii) did Shore Spine adequately plead that the procedures at issue were not EIU?; and iii) did Shore Spine's allegation that the plan administrator allegedly utilized a blanket policy of denying MUA claims excuse Shore Spine from pleading facts establishing that the procedures at issue were "medically necessary" and not EIU?  As set forth infra, Shore Spine's allegations regarding the medical necessity and safety/effectiveness (i.e., non-EIU

nature) of MUA procedures are so similar in both the <u>UnitedHealthGroup</u> and <u>Prospect Medical</u> matters that the first <u>Caver</u> factor is easily satisfied.

### i.     Shore Spine's Allegations of the Non-EIU Nature of MUA

Shore Spine's limited allegations regarding the general acceptance and safety (i.e., non-EIU nature) of MUA are nearly the same in both <u>UnitedHealthGroup</u> and <u>Prospect Medical</u>. If anything, the factual allegations in Shore Spine's proposed Second Amended Complaint[3] in the <u>UnitedHealthGroup</u> matter are <u>more</u> detailed than those set out in the <u>Prospect Medical</u> case, which are limited to a recitation that the American Medical Association has issued a CPT code for MUA and that the National Academy of Manipulation Under Anesthesia has declared MUA to be an appropriate treatment for pain.  <u>Compare</u> Prospect TAC, a true and correct copy of which is attached to the Wohlforth Cert. as **Exhibit D**, ¶ 20, <u>with</u> <u>UnitedHealthGroup</u> Proposed Second Am. Compl. ("United PSAC") a true and correct copy of which is attached to the Wohlforth Cert. as **Exhibit E**, ¶¶ 40-43.

For instance, paragraph 41 of the United PSAC contains five bullet points describing the prerequisites that a medical procedure must meet before it is assigned a CPT code.  Paragraph 42 of the United PSAC states that the fact that a medical procedure has been assigned a CPT Code means that the procedure has "gained a level of acceptance such that their efficacy must be determined on a case-by-case basis."  Similarly, paragraph 43 of that pleading states that "there is ample medical and chiropractic literature specifically demonstrating the efficacy, appropriateness, and safety of MUA procedures to treat patients for pain in the back, neck, shoulder, hip and wrist", and also cites one specific journal article concerning MUA.  In

---

[3] CGLIC has focused on the plaintiffs' Proposed Second Amended Complaint in the <u>UnitedHealthGroup</u> matter, as it was Shore Spine's latest and most detailed, albeit still insufficient, pleading.

paragraph 55 of the United PSAC, Shore Spine alleges that "MUA treatments are widely accepted in the medical community as appropriate, non-experimental procedures for the treatment of pain." While the Third Circuit has found that these conclusory allegations were insufficient, they go well beyond the EIU allegations in the Prospect TAC.

The closest thing in the Prospect TAC to an allegation that the procedures used on Representative Patient ML were not EIU is Plaintiffs' conclusory contention that "Northeastern appealed CG Life's nonpayment, noting, inter alia, that the procedures at issue were listed as established procedures in the AMA CPT codebook of reimbursable procedures, and as such did not represent experimental or emerging technologies." See Prospect TAC ¶ 39. There is no similar allegation concerning the treatment provided to AS, only the general statement, mentioned above, regarding the existence of a CPT code for MUA, as well as the contention that the National Academy of Manipulation Under Anesthesia has blessed MUA as a suitable pain treatment. See Prospect TAC ¶ 20. In any event, like the United PSAC, the Prospect TAC only discusses the appropriateness of MUA in the abstract, and lacks any allegations that the MUA procedures at issue were safe, effective and otherwise non-EIU when used to treat the particular conditions suffered by the Representative Patients. As noted above, in UnitedHealthGroup, the Third Circuit found that the plaintiffs' pleading was "fatally flawed" because it lacked "such an individualized assessment." 2012 U.S. App. LEXIS 20050, *10.

    ii.    **Shore Spine's Allegations Regarding the Medical Necessity of the Procedures At Issue**

The pleadings in Prospect Medical and UnitedHealthGroup are similarly conclusory with regard to their allegations that the MUA procedures at issue were "medically necessary," a condition of coverage under the relevant health care plans. Compare Prospect TAC ¶¶ 24-45, with United PSAC ¶¶ 54-154 (a discussion of the treatment rendered to the representative

patients).  In the Prospect TAC, Plaintiffs simply state that they performed MUA procedures on the Representative Patients to treat certain enumerated conditions, with no mention of why those procedures were appropriate, let alone why MUA, as opposed to any other medical procedure, was necessary to treat the patients.  See Prospect TAC ¶¶ 24-45.  While Plaintiffs claim that, on administrative appeal, they provided CGLIC with letters or other documentation indicating their opinions that the procedures were medically necessary, (id. at ¶¶ 31, 39), Plaintiffs have not alleged any facts reflecting why that might be the case.

The corresponding allegations in the United PSAC are similarly conclusory.  The UnitedHealthGroup plaintiffs simply alleged that they made determinations as to the medical necessity of the MUA procedures, without providing any explanation as to why those procedures were necessary.  (United PSAC ¶¶ 54, 76, 94, 115).  As in Prospect Medical, the plaintiffs in UnitedHealthGroup alleged that the MUA procedures were medically necessary because they themselves said so.  Compare Prospect TAC ¶ 39 ("The treating doctor opined that manipulation under anesthesia of the spine and shoulder was medically necessary.") with United PSAC ¶¶ 76-77 ("Dr. Lambrou made a considered, expert determination that MUA procedures were medically necessary to treat Patient JK's condition.  As such, the MUA procedures administered to Patient JK were medically necessary and non-experimental for the conditions they were used to treat.")).  The Third Circuit found that the allegations of medical necessity in the United PSAC -- identical in substance to their counterparts in the Prospect TAC -- were "conclusory" and therefore facially insufficient.  UnitedHealthGroup, 2012 U.S. App. LEXIS 20050 at *13.  ("In relevant part, the [United PSAC] added only conclusory allegations that MUA was 'medically necessary' . . . These additions were inadequate to have withstood another motion from UnitedHealth to dismiss the Complaint.").

### iii.    Shore Spine's allegations regarding a blanket policy for MUA denials

As set out above, the plaintiffs in <u>UnitedHealthGroup</u> and this matter have not alleged facts demonstrating that the MUA procedures at issue were "medically necessary" and not EIU for the patients and conditions they were used to treat.  Instead, both sets of plaintiffs attempt to escape that burden by alleging that the defendant plan administrators acted arbitrarily and capriciously by denying all MUA claims pursuant to a blanket policy.  <u>Compare</u> United PSAC, §§ 50- 53, 73, 91, 112, 124, 127 and 133 <u>with</u> Prospect TAC, §§ 32, 40 and 48.  Shore Spine's allegations on this point are nearly identical in both matters.  As the Third Circuit held in <u>UnitedHealthGroup</u>, such allegations are insufficient.  2012 U.S. App. LEXIS 20050 at *12 ("Even assuming the existence of such a policy, however, Plaintiffs' allegations fall well short of plausibly showing that the policy was arbitrary and capricious.  Indeed, if MUA procedures were either 'experimental' or not 'medically necessary' as defined by the representative plans, routinely denying coverage for such procedures would have been consistent with the terms of those plans.").

### iv.    The minor differences in the UnitedHealthGroup and Prospect Medical pleadings do not preclude application of the collateral estoppel doctrine

As described in detail above, the relevant portions of the <u>UnitedHealthGroup</u> and <u>Prospect Medical</u> pleadings are functionally identical.  While certain allegations of the United PSAC provide some additional detail not present in the Prospect TAC, those differences are certainly not "'of a character and degree as might place before the court an issue different in some respect from the one decided in the initial case.'"  <u>Anspach</u>, 380 F. App'x at 184 (internal citations omitted).  Indeed, if anything, the Third Circuit's finding that the more detailed United

PSAC was patently insufficient further highlights the flaws of the Prospect TAC. The close similarity between the two pleadings satisfies the first Caver factor.

### b.  Second Factor - The issues to be precluded were actually litigated in the UnitedHealthGroup matter

The second Caver factor examines whether the specific points at issue were litigated in a prior case. See 420 F.3d at 249. Here, each of the relevant issues pertains to the sufficiency of the provider plaintiffs' allegations that plan administrators arbitrarily and capriciously denied benefits for MUA claims, and were fully litigated both before Judge Cavanaugh and again on appeal before the Third Circuit in the UnitedHealthGroup matter. The second Caver factor is therefore satisfied here.

### c.  Third Factor - The District Court issued a final judgment on the merits of the UnitedHealthGroup matter

The third Caver factor looks to whether a court has previously entered a final judgment on the issues for which collateral estoppel is sought. Id. As explained in the "Background" section above, Judge Cavanaugh found that the UnitedHealthGroup plaintiffs had failed to state a plausible claim for relief and therefore dismissed their First Amended Complaint. See Judge Cavanaugh's March 17, 2011 Opinion, Wohlforth Cert. Ex. B, at 5-8. Judge Cavanaugh later denied the UnitedHealthGroup plaintiffs' motion for leave to file a proposed Second Amended Complaint. See Judge Cavanaugh's October 31, 2011 Opinion, Wohlforth Cert. Ex. C, at 5-6. Those rulings, taken together, operated as a dismissal with prejudice and thus a judgment on the merits of the plaintiffs' claims. See Fed. R. Civ. P. 41(b). Moreover, in affirming those decisions, the Third Circuit removed all doubt as to the finality of Judge Cavanaugh's judgment. The procedural history of the UnitedHealthGroup matter therefore satisfies the third Caver factor.

- 14 -

**d.    Fourth Factor - Determination of the issues to be precluded were essential to the judgment in the UnitedHealthGroup matter**

The fourth <u>Caver</u> factor examines whether resolution of the issues sought to be precluded was essential to the judgment in the prior action.  <u>See</u> 420 F.3d at 249.  In resolving the <u>UnitedHealthGroup</u> matter, Judge Cavanaugh found that Shore Spine had failed to plead its claims with the level of factual specificity required under federal law.  <u>See</u> Judge Cavanaugh's March 17, 2011 Opinion, Wohlforth Cert., Ex. B, at 5-8.  In addition to affirming that rationale, the Third Circuit also expressly rejected Shore Spine's argument that, because the plan administrator allegedly utilized a blanket policy of denying MUA claims, Shore Spine was not required to provide factual specificity as to the procedures at issue.  <u>UnitedHealthGroup</u>, 2012 U.S. App. LEXIS 20050, at * 11-12.  As these determinations formed the basis for both Judge Cavanaugh and the Third Circuit's decisions, the fourth <u>Caver</u> factor is satisfied.

**e.    Fifth Factor - Shore Spine was a party in the UnitedHealthGroup matter**

The fifth and final <u>Caver</u> factor examines whether the party against whom the collateral estoppel doctrine is asserted was also a party in the prior matter.  <u>Id.</u>  As Plaintiff Shore Spine was also a plaintiff in the <u>UnitedHealthGroup</u> matter, this factor is satisfied.

**f.    <u>Shore Spine's claims are subject to collateral estoppel</u>**

Shore Spine's allegations in the <u>UnitedHealthGroup</u> are functionally identical to its contentions in the <u>Prospect Medical</u> matter.  Both Judge Cavanaugh and the Third Circuit based their rulings in <u>UnitedHealthGroup</u> on the patent deficiencies in Shore Spine's allegations.  Each of the five <u>Caver</u> factors is, therefore, satisfied, and the Court should dismiss Plaintiff Shore Spine's claims in this matter pursuant to the doctrine of collateral estoppel.

### III.   Plaintiffs' Claims Fail On the Same Grounds Enumerated by the Third Circuit in UnitedHealthGroup

Even disregarding the application of the collateral estoppel doctrine against Plaintiff Shore Spine, Plaintiffs' TAC suffers from the very same basic flaws as the pleadings at issue in UnitedHealthGroup.   Indeed, as discussed above, the pleadings in both matters are nearly identical and, if anything, the United PSAC, which both Judge Cavanaugh and the Third Circuit found to be patently insufficient, includes more factual detail than the Prospect TAC.   As such, the Prospect TAC fails and should be dismissed for the same reasons that the Third Circuit articulated in UnitedHealthGroup.

The Third Circuit's opinion in UnitedHealthGroup is unpublished and, therefore, not binding authority beyond the parties before the Court in that case (such as Shore Spine).   Even without its collateral estoppel effect, however, the UnitedHealthGroup decision serves as extremely strong persuasive authority with respect to this case, including the remaining plaintiff, Prospect Medical, that was not involved in the UnitedHealthGroup case.   Given that the Third Circuit's opinion concerned the very same procedures at issue here, nearly identical conclusory allegations, the same counsel and, in fact, one of the same claimants, the Third Circuit's opinion in UnitedHealthGroup could not be more on-point.   It is hard to fathom why the Third Circuit would treat this matter any differently.   Clearly in this case, any judgment entered in favor of plaintiffs would most likely be overturned on appeal on the same grounds the Court of Appeals already recognized in UnitedHealthGroup.   This Court should, therefore, follow the example of the two courts in UnitedHealthGroup and dispose of the Prospect Medical matter in the same fashion and in its entirety.

    **a.**    <u>**Plaintiffs Failed to Adequately Plead the Medical Necessity of the Procedures at Issue**</u>

In <u>UnitedHealthGroup</u>, the Third Circuit found that, to sufficiently allege that a plan administrator arbitrarily and/or capriciously denied MUA claims, a plaintiff must allege facts demonstrating that the treatment rendered was "medically necessary" based on the needs of the specific patients at issue.  2012 U.S. App. LEXIS 20050 at *9.  That sort of "individualized assessment" is mandatory.  <u>Id.</u>  More specifically, the Third Circuit wrote:

> Despite the fact that a "medical necessity" determination requires an individualized assessment based on the specific needs of a patient, Plaintiffs have alleged no facts to demonstrate that MUA procedures were "medically necessary" for the particular patients who received them.  Plaintiffs have not even alleged that MUA procedures were beneficial to their patients, let alone necessary to meet their needs.  The amended complaint likewise contains no facts suggesting that MUA treatment was the most appropriate level of service that could safely be supplied in the given circumstances.

<u>Id.</u>

Plaintiffs' allegations of medical necessity in the Prospect TAC are wholly conclusory, amounting only to Plaintiffs' opinion on the matter.  While Plaintiffs contend that they performed MUA procedures on each Representative Patient to treat a series of conditions, Plaintiffs provide no indication of why those procedures were appropriate, let alone why MUA, rather than any other medical procedure, was necessary to treat the patients.[4]  <u>See</u> Prospect TAC ¶¶ 24-45.  Plaintiffs therefore offer only the same type of conclusory allegations of medical

---

[4] It must also be noted that the test is whether the procedures at issue were medically necessary, <u>not</u> whether the procedures were the best treatment that a particular medical specialty is able to offer.  Consequently, even allegations that other chiropractic therapies were insufficient to treat a patient's conditions are not, on their own, sufficient to establish that MUA procedures were medically necessary.  So far as the Prospect PSAC discloses, it may very well be that non-chiropractic treatments presented the appropriate course of action.

necessity as those at issue in <u>UnitedHealthGroup</u> and their complaint should be disposed of in the same fashion.

      **b.**    **Plaintiffs Failed to Adequately Plead That The MUA Procedures At Issue Were Not Experimental**

A plaintiff contending that an administrator of ERISA-governed health benefits plans wrongfully denied claims on the grounds that the procedures at issue were "EIU" (or the functional equivalent) must allege facts sufficient to demonstrate that those procedures were not EIU for the specific patients and conditions involved.  <u>UnitedHealthGroup</u>, 2012 U.S. App. LEXIS 20050, * 9-10 ("Plaintiffs have not demonstrated that such treatment plausibly would be considered safe and effective for treating the individual patients in this case.  Without such an individualized assessment, the complaint is <u>fatally flawed</u>.") (emphasis added).  It is not, therefore, sufficient for a plaintiff to allege, in the abstract, that a certain procedure is safe and effective.  Similarly, a plaintiff cannot overcome this pleading hurdle by alleging that the AMA has issued a CPT code for the procedure, <u>id.</u> at * 9-10, or that a particular journal published an article finding the procedure to be safe and effective "in certain contexts." <u>Id.</u> at *13.  A plaintiff must show why the procedures were not EIU under the particular circumstances of its case.

Here, the only allegations in the Prospect TAC suggesting that the MUA procedures at issue were not EIU are Plaintiffs' general contentions that i) the AMA has issued a CPT code for MUA; ii) the AMA considers MUA to be "consistent with contemporary medical practice" and that MUA "does not represent experimental or emerging technology"; and  iii) the National Academy of Manipulation Under Anesthesia has found MUA to be an appropriate treatment for pain. (<u>See</u> Prospect TAC, ¶ 20).  These are the very sort of generalized allegations that the Third Circuit rejected in <u>UnitedHealthGroup</u>.  As Plaintiffs have failed to plead that the MUA

procedures at issue were not EIU with the degree of specificity required by the Third Circuit, their claims must be dismissed.

      **c.    Plaintiffs' allegations regarding CGLIC's blanket policy of denying MUA claims cannot save its conclusory pleading**

      In <u>UnitedHealthGroup</u>, the Third Circuit rejected the plaintiffs' argument that, because the defendant plan administrator defendant allegedly employed a company-wide, blanket policy of denying all MUA claims, the plaintiff should be excused from pleading facts sufficient to show that the specific MUA procedures at issue were medically necessary and not EIU.  2012 U.S. App. LEXIS 20050, at * 11-12.  The Court of Appeals reasoned:

> Even assuming the existence of such a policy, however, Plaintiffs' allegations fall well short of plausibly showing that the policy was arbitrary and capricious.  Indeed, if MUA procedures were either "experimental" or not "medically necessary" as defined by the representative plans, routinely denying coverage for such procedures would have been consistent with the terms of those plans.

<u>Id.</u> at *12.

      Like the plaintiffs in <u>UnitedHealthGroup</u>, Plaintiffs here allege that CGLIC employs a blanket policy for denying all MUA claims.  (Prospect TAC, §§ 32, 40 and 48).  As the Third Circuit clearly established, such allegations are insufficient to save Plaintiffs' otherwise factually deficient pleading.

## <u>CONCLUSION</u>

      For the foregoing reasons, Defendants CGLIC respectfully requests that Plaintiffs' Third Amended Complaint be dismissed in its entirety.

Respectfully submitted,

**GIBBONS P.C.**
*Attorneys for Defendant*
*Connecticut General Life Insurance Company*

DATED:   December 18, 2012                    BY: s/ Brian J. McMahon
                                                Brian J. McMahon
                                                E. Evans Wohlforth, Jr.
                                                Timothy J. Duva