**NOT FOR PUBLICATION**                                                                                           CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROSPECT MEDICAL, P.C., et al., : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> CIGNA CORP., et al., : <br> : <br> Defendants. : <br> : <br> : | **Civil Action No. 09-5912 (SRC)** <br><br> **OPINION** |

**CHESLER**, District Judge

      This matter comes before the Court on the motion to dismiss the Third Amended Class Complaint ("Complaint") by Defendant Connecticut General Life Insurance Company ("Defendant" or "CGLIC").  (Docket Entry 105)  Plaintiffs Shore Spine Center & Physical Rehabilitation and Northeastern Spinal Health & Rehabilitation, LLC, (collectively "Plaintiffs"), who have brought suit on behalf of themselves and those similarly situated, have opposed the motion and moved for summary judgment.  (Docket Entry 113)  The Court will rule on the papers submitted, without oral argument.  See Fed. R. Civ. P. 78.  For the reasons that follow, the Court will grant Defendant's motion to dismiss and deny Plaintiffs' motion for summary judgment.

**I.    FACTUAL BACKGROUND**

      This lawsuit arises out of a dispute between the healthcare provider Plaintiffs and

1

Defendant insurer over CGLIC's routine denials of claims for a procedure known as manipulation under anesthesia ("MUA"). MUA is a manual therapy aimed at improving articular and soft tissue movement. MUA requires an anesthesiologist to work with a specially trained chiropractor or physician to break up scar tissue around a joint while the patient is under moderate to deep sedation. Plaintiff providers performed MUA on two patients ("Patient AS" and "Patient ML") covered by plans administered by CGLIC. Plaintiffs then sought reimbursement from CGLIC on behalf of those patients. Defendant denied the claims on the grounds that the procedures were experimental/investigational/unproven ("EIU") and not medically necessary, and therefore not covered by the patient-insureds' plans. Plaintiffs allege that CGLIC has wrongfully adopted a blanket policy of denying MUA claims, despite the fact that MUA has been listed as a Category I CPT code in the American Medical Association's Codebook of Reimbursable Procedures ("CPT Codebook") for more than 30 years and has been recognized in medical literature as an effective treatment for pain. Plaintiffs allege that their claims were denied solely because of this blanket policy, rather than on individualized assessments of their patients' medical needs. Plaintiffs have brought suit to recover damages under the Employee Retirement Income Security of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

## II.  DISCUSSION

### A.  Standard of Review

Rule 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Federal Rule of Civil Procedure 12(h)(2) provides that a Rule 12(c) motion authorizes a party to raise grounds upon which a pleading fails to state a claim upon which relief may be granted. The Third Circuit has

held that a motion brought under Rule 12(c) is governed by the same standard of review applicable to Rule 12(b)(6) motions.  Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991).  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true.  Twombly, 550 U.S. at 555; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The Third Circuit, following Twombly and Iqbal, has held that the pleading standard of Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'"  Phillips, 515 F.3d at 234.  In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents.  See White Consol. Indus., 998 F.2d at 1196.

      **B.**    **Defendant's Motion to Dismiss**

CGLIC argues that the Complaint fails to state a claim upon which relief can be granted, because Plaintiffs have not sufficiently alleged that the treatments rendered were medically necessary and non-EIU for patients AS and ML.

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, a court reviews its decisions under an abuse-of-discretion (or arbitrary and capricious) standard. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011). CGLIC retained the discretion to determine whether a particular procedure was "medically necessary." (See Third Am. Compl. ¶ 23) ("Pursuant to each plan's terms, Covered Expenses are 'expenses incurred by or on behalf of a person . . . to the extent that the services or supplies provided are recommended by a physician, and are Medically Necessary[1] for the care and treatment of an Injury or a Sickness, as determined by [CGLIC]'"). As such, CGLIC will only be liable under ERISA if its decision to deny coverage was arbitrary and capricious. See Viera, 642 F.3d at 413.

In arguing that the Plaintiffs have failed to properly plead that the MUA procedures were medically necessary and not EIU for Patients AS and ML, CGLIC relies heavily on Advanced Rehab., LLC v. UnitedHealthgroup, Inc., 498 F. App'x 173 (3d Cir. 2012), a case with strikingly similar facts. In UnitedHealthgroup, a group of provider plaintiffs (including current Plaintiff

---

[1] In defining the term "medically necessary," patient ML's plan states that "medically necessary care is not: experimental or investigational in nature. Likewise, patient AS's plan expressly excludes coverage for services deemed "experimental, investigational, or unproven." Although copies of the plan documents were not made available to the Court in the Complaint or the Rule 12(c) briefing, relevant documents were provided in connection with Plaintiffs' motion for summary judgment. Even though the Court will dismiss the Plaintiffs' claims and therefore not reach the motion for summary judgment, the Court still properly considers the plan documents, because "[a] 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3rd Cir. 1997) (citation omitted).

Shore Spine) brought suit against an ERISA-covered health plan administrator for denying reimbursement claims for MUA. The plans at issue only covered treatment UnitedHealth deemed "medically necessary" and not "experimental, investigational, or unproven." Id. at 175. The District Court dismissed the complaint on the grounds that the plaintiffs failed to allege that the procedures "were either medically necessary or non-experimental for the conditions they were used to treat." Advanced Rehab., LLC v. Unitedhealth Grp., Inc., No. 10-263, 2011 WL 995960 (D.N.J. Mar. 17, 2011). On appeal, the Third Circuit affirmed. UnitedHealthgroup, supra, 498 F. App'x at 174. The Court held that the plaintiffs had failed to make specific factual allegations from which it could infer that the MUA procedures were medically necessary:

> Despite the fact that a "medical necessity" determination requires an individualized assessment based on the specific needs of a patient, Plaintiffs have alleged no facts to demonstrate that MUA procedures were "medically necessary" for the particular patients who received them. Plaintiffs have not even alleged that MUA procedures were beneficial to their patients, let alone necessary to meet their needs. The amended complaint likewise contains no facts suggesting that MUA treatment was the most appropriate level of service that could safely be supplied in the given circumstances.

Id. at 177.

The Court also held that the plaintiffs had failed to allege that the MUA procedures were non-EIU for the treated patients. See id. (". . . Plaintiffs have failed to allege that MUA procedures were both consistent with national medical standards and considered by medical literature to be safe and effective."). The plaintiffs in UnitedHealthgroup pointed to the inclusion of MUA in the CPT Codebook to establish that the procedures were not EIU. Id. at 175. The Court rejected that argument:

> [A] mere CPT code is not enough to establish a plausible entitlement

> to relief. Indeed, in its Introduction to the Codebook, the AMA warns that "[i]nclusion in the ... Codebook does not represent endorsement ... of any particular diagnostic or therapeutic procedure." The Introduction also states that "inclusion or exclusion of a procedure does not imply any health insurance coverage or reimbursement policy." And even if a CPT code from just one organization were enough to suggest that MUA treatment is consistent with national standards, Plaintiffs have not demonstrated that such treatment plausibly would be considered safe and effective for treating the individual patients in this case. Without such an individualized assessment, the complaint is fatally flawed.

Id. at 177.

Defendant argues that the Complaint suffers from the very same defects as the complaint considered in UnitedHealthgroup. With respect to medical necessity, Defendant contends that the Complaint's allegations are wholly conclusory and provide no indication of why MUA procedures were appropriate or superior to other medical alternatives. On the issue of whether the MUA procedures were EIU, Defendant insists that the Complaint contains only the sort of generalized allegations the Third Circuit rejected in UnitedHealthgroup.

Plaintiffs do not meet Defendant's challenges squarely. First, Plaintiffs argue that since UnitedHealthgroup is an unpublished, non-precedential Third Circuit opinion, this Court may not rely on it without "running afoul" of Rule 5.7 of the Third Circuit Court of Appeals' Operating Procedure. Rule 5.7 sates that "[t]he court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing." Of course, the Third Circuit's Internal Operating Procedures, by definition, apply to the *internal* operating procedures of the Third Circuit Court of Appeals, not the United States District Court for the District of New Jersey. See 3d Cir. I.O.P. p. 1 (procedures "cover the essential processes of this Court . . . ."). And while it is

6

true that UnitedHealthgroup is non-precedential and therefore not binding upon this Court, it may nevertheless be treated as persuasive authority. See United States v. Barney, 792 F. Supp. 2d 725, 729 (D.N.J. 2011) aff'd, 672 F.3d 228 (3d Cir. 2012) cert. denied, 133 S. Ct. 170 (2012) ("district courts may rely on non-precedential opinions as strongly persuasive authority") (citing In re Grand Jury Investigation, 445 F.3d 266, 276 (3d Cir. 2006)).

Second, Plaintiffs contend that Defendant's current arguments were rejected by this Court's Amended Order granting in part and denying in part Defendant's motion to dismiss the Second Amended Complaint. (Docket Entry 43) According to Plaintiffs, Defendant has provided "no reason why the Court should revisit its prior determinations." (Pls.' Opp. Br. 17) In essence, Plaintiffs rely upon the "law of the case" doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997). Having reviewed the record, the Court concludes that its February 15, 2011, ruling on the Second Amended Complaint addressed a related but distinct set of issues, and that it is therefore fully consistent with today's decision.[2]

Turning to the allegations in the Complaint, the Court agrees that Plaintiffs have failed to

---

[2] The Court also notes that "[a]n intervening change in controlling law is an exception to the law of the case doctrine." Hull v. Freeman, 991 F.2d 86, 90 (3d Cir. 1993). Although, as already discussed, the Third Circuit's opinion in UnitedHealthgroup is not precedential, the Court appreciates the persuasive character of a higher court's resolution of a legal question on nearly identical facts.

plead facts that support a plausible entitlement to relief based on either patient's claims. The Complaint alleges no facts to support the conclusion that use of MUA was medically necessary and non-EIU to treat AS's chronic back pain. Indeed, only two allegations touch on the issue of medical necessity even obliquely. (See Third Am. Compl. ¶ 31 ("Both appeals included numerous articles documenting the effectiveness, acceptance, and wide ranging use of manipulation under anesthesia, including articles, case law, as well as the medical records and letter of medical necessity from Dr. Lambrou"), ¶ 33 ("This letter contains no individualized analysis of the patient's medical condition or need for treatment, yet concluded that 'medical necessity had not been established.'")). The Court is careful to note that Plaintiffs have not even alleged that MUA *was* medically necessary in conclusory terms – the phrase "medical necessity" only comes up in the context of allegations that CGLIC's claim review process was inadequate. Not that the Court requires a rote incantation of medical necessity – as the Third Circuit noted in UnitedHealthgroup, a bare assertion that the procedures were "medically necessary" would still be insufficient under Iqbal and Twombly. 498 Fed. App'x at 177. But Plaintiffs have not even given the Court that much.

With respect to Patient ML, the Complaint makes a slightly more substantial allegation of medical necessity:

> In addition, all medical documentation supplying the medical rationale for the procedures was attached to the appeal. The medical reports documented that, "Upon review of the patient's history and supplied medical records, a plateau has been reached reflecting minimal further improvement with past treatment attempts. Upon examination, less than optimum range of motion is present with significant end range pain and myofascial tenderness to palpation and/or including radicular pain and/or parasthesis." The treating doctor opined that manipulation under anesthesia of the spine and

8

shoulder was medically necessary.

(Compl. ¶ 39) Here Plaintiffs again focus on the alleged deficiencies in the claims review process. However, even construing the above passage as a direct allegation of medical necessity, it fails to establish a plausible entitlement to relief. Assuming it is true that ML had reached a plateau under other treatments, the Complaint does not explain the basis for the treating physician's opinion that MUA was an appropriate next course. The unadorned conclusion of a single doctor that a particular treatment was "medically necessary" amounts only to a "naked assertion" that "stops short of the line between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557.

The Complaint also fails to allege facts showing that the MUA procedures were non-EIU for patients AS and ML. As in UnitedHealthgroup, Plaintiffs here rely heavily on the inclusion of MUA in the CPT Codebook to establish that MUA is safe and effective in general. But, for the reasons already discussed, that argument was soundly rejected in UnitedHealthgroup. 498 F. App'x at 177. Plaintiffs also allege "[t]he applicable MUA protocols, set forth by the National Academy of Manipulation Under Anesthesia, hold (*inter alia*) that MUA is an appropriate treatment for pain." (Compl. ¶ 20) But Plaintiffs do not directly allege that the MUA procedures were safe and effective for treatments for patients AS and ML. See UnitedHealthgroup, 498 F. at 177 (complaint is fatally flawed without an individualized demonstration that treatment would plausibly be considered safe and effective for treating individual patients at issue).

The Complaint also repeats the allegation that CGLIC's denials were based "solely on a blanket policy of denial of reimbursement for MUA procedures for pain" rather than an "individualized analysis of the patient's case." (See, e.g., Compl. ¶ 42) Ironically, in failing to

9

allege facts showing that the MUA treatments were medically necessary and non-EIU for patients AS and ML, the Complaint largely apes the kind of generalized conclusions it criticizes in the claim denial letters. In UnitedHealthgroup, the plaintiffs argued that "facts regarding individualized treatment [were] unnecessary . . . because UnitedHealth maintained 'a company-wide practice by which all in-house appeals of the denial of claims for MUA's [were] routinely rejected without regard to the merits of the particular individual claims.'" 498 F. App'x at 177. That argument was rebuffed, id. at 178, and this Court agrees that an allegation of an insurer's blanket policy of denying claims for MUA is not a suitable substitute for alleging facts that show that MUA was medically necessary and a safe and effective treatment for the ailments of the particular patients at issue.

### C.   Plaintiffs' Motion for Summary Judgment

Having determined that the Complaint fails to state a claim upon which relief can be granted, the Court must necessarily deny Plaintiffs' motion for summary judgment.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss and deny Plaintiffs' motion for summary judgment. An appropriate Order accompanies this Opinion.

   s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: June 19, 2013